*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

LISA BRIDGE; WILLIAM W. BRIDGE, III,
     *Plaintiffs-Appellants,*

  *v.*

OCWEN FEDERAL BANK, FSB; OCWEN
FINANCIAL CORPORATION; OCWEN LOAN
SERVICING, LLC; AAMES CAPITAL
CORPORATION; FIRSTAR BANK, nka US
BANCORP; OCWEN FEDERAL LOAN
SERVICING COMPANY; DEUTSCHE BANK
NATIONAL TRUST CO., fka BANKERS TRUST
COMPANY OF CALIFORNIA,
     *Defendants-Appellees.*

No. 09-4220

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-02739—David D. Dowd, Jr., District Judge.

Decided and Filed: April 30, 2012

Before: CLAY and STRANCH, Circuit Judges; BARRETT, District Judge.*

_____

## COUNSEL

**ON BRIEF:** Charles E. Ticknor, III, Martha Van Hoy Asseff, DINSMORE & SHOHL, LLP, Columbus, Ohio, for Appellees. Lisa Bridge, William W. Bridge, III, Novelty, Ohio, pro se.

  STRANCH, J., delivered the opinion of the court, in which BARRETT, D. J., joined. CLAY, J. (pp. 14–19) delivered a separate opinion concurring in part.

_____

*The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————————

**OPINION**

———————————————

JANE B. STRANCH, Circuit Judge.  The Fair Debt Collection Practices Act was passed to protect consumers against both abusive and mistaken collection activity.  This case reveals why.  It began with seemingly innocuous accounting errors on the part of a bank that were corrected.  Despite repeated proof of that correction, unremitting collection activity was undertaken, foreclosure proceedings were instituted, and the credit of two consumers was seriously impaired.  This litigation resulted.

Lisa Bridge and William W. Bridge, III[1] sued the mortgagee and related parties under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq.  They now appeal a district court judgment dismissing their Complaint.  For the reasons explained herein, we hold the Bridges have stated a claim under the FDCPA, we **REVERSE** the dismissal of their Complaint, and we remand for further proceedings consistent with this opinion.

**I.  FACTS AND PROCEEDINGS**

Because this appeal arises from dismissal of the Second Amended Complaint ("SAC"), we begin review by accepting as true the facts alleged therein by the Bridges, as follows.  Bridge's bank, Firstar, erroneously dishonored her check for her April 2002 monthly mortgage payment to Aames Capital Corporation.  Bridge then had Firstar issue an "official check" to Aames on April 8, 2002 but Firstar also failed to honor that check.  Aames notified Bridge of the default on April 20 and assessed a late fee.  Bridge had Firstar send a second official check.  Firstar ultimately honored her personal check as well as one of the official checks, resulting in two mortgage payments received for the month of April.  As a result, Bridge did not submit a payment for May.

———————————————

[1]Mr. and Mrs. Bridge brought this case as collection activities were undertaken against both; however, the mortgage debt was solely in the name of Mrs. Bridge, who will be referenced as "Bridge" herein.  References to William Bridge will be to "Mr. Bridge."

While Aames was alleging default in the April payment due, it sent notice to Bridge on April 15, that it had assigned her mortgage to Ocwen.**[2]** The Bridges contend that Ocwen is a division of Deutsche Bank National Trust Co. and that no actual assignment of the mortgage is of record with the county. Ocwen subsequently began dunning Bridge and her husband, who is not a co-borrower on the mortgage loan, for the May payment claimed to be overdue, despite proof of the double payment submitted by Bridge to Ocwen and Aames. Since then Ocwen has: made endless collection calls by phone to Mr. and Mrs. Bridge, despite cease and desist requests and registry on the federal "Do Not Call" directory; threatened foreclosure; assessed monthly late fees; and reported derogatory information to the credit reporting agencies. Additionally, the law firm of Moss, Collis, Stawiarski, Moris, Schneider and Prior, LLC, allegedly retained by Ocwen, sent a collection letter to Bridge threatening foreclosure.

The Bridges filed suit in federal court, alleging that Defendants violated the FDCPA, 15 U.S.C. §§ 1692c, 1692d, and 1692e, by making false representations in connection with the debt, threatening to take impermissible actions, making false representations that Bridge had committed a crime or other wrongful conduct, seeking payment from Mr. Bridge, and continuing to call both after repeated requests to stop. The Bridges further asserted that Ocwen and Deutsche violated the FDCPA by making false representations as to their standing to foreclose, falsely representing that the mortgage was in default, falsely representing that the debt was owed to Ocwen or Deutsche, and threatening to take action impermissible due to Deutsche's failure to comply with state law as a trustee. The Bridges alleged other state and federal law claims as well, but have not raised them on appeal.

Ocwen and Deutsche separately moved to dismiss the Complaint. Ocwen argued that it was exempt from the FDCPA because it is not a debt collector, based on its status as a loan servicer and, in the alternative, because the loan actually was not in default at the time of assignment. *See* 15 U.S.C. § 1692a(6)(F). Deutsche argued that it was

---

**[2]**Defendants filed briefs in this Court on behalf of "Ocwen Loan Servicing, LLC, successor-in-interest to Ocwen Federal Bank, FSB ("Ocwen")." We adopt Defendants' designation of the LLC as the proper defendant and its reference as "Ocwen."

exempt from the FDCPA because, as the purchaser of the debt, it is a creditor and not a debt collector, or it is neither.  Ocwen filed a counterclaim for foreclosure as well.

For purposes of review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court assumed the truth of the allegations that Ocwen was not a loan servicer and that Deutsche was not a creditor.  Nonetheless, the district court dismissed the Complaint, concluding that neither Defendant was covered under the Act as neither was a debt collector as defined therein.

In their timely appeal, the Bridges argue that the district court erred by dismissing their claims, that the district court erroneously considered facts outside of the complaint, and that the district court applied an inappropriate, heightened pleading standard.  The Bridges state they are not reasserting claims other than those under the FDCPA and, thus, we review the district court's decision only to the extent it deals with the FDCPA.  *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

## II.  STANDARD OF REVIEW

This Court reviews *de novo* a district court order dismissing a complaint pursuant to Rule 12(b)(6).  *Booth Family Trust v. Jeffries*, 640 F.3d 134, 139 (6th Cir. 2011).  In determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).  We are ever mindful that *pro se* complaints are liberally construed and are held to less stringent standards than the formal pleadings prepared by attorneys.  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

## III.  ANALYSIS

### A.  Coverage Under the Fair Debt Collection Practices Act

"If [the Fair Debt Collection Practices Act] is not enacted, Congress will then be classifying as 'deadbeats' those individuals who through no fault or action of their own are being harassed, hounded, threatened and intimidated by debt collectors." H.R. Rep. No. 131, 95th Cong. 1st Sess. 9 (1977).  Congress *did* enact the FDCPA, however, effectuating its intention to prohibit precisely this kind of misclassification and harassment.  We conclude that the district court's judgment must be vacated because the Bridges have sufficiently alleged that the Defendants are debt collectors within the coverage of the FDCPA.

Under the FDCPA, a "debt collector" is defined as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . .  The term does not include --

. . .
(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; . . . [or] (iii) concerns a debt which was not in default at the time it was obtained by such person . . . .

15 U.S.C. § 1692a(6).

We note, as other circuits have, that "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)); *cf. Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (holding the

definition of debt collector "does not include the consumer's creditors"). If an entity which acquires a debt and seeks to collect it cannot be both a creditor and a debt collector, can it be neither? We answer no. To allow such an entity to define itself out of either category would mean that the intended protection of the FDCPA is unavailable. Both the statutory language and legislative history of the FDCPA establish that such an entity is either a creditor or a debt collector and its collection activities are covered under the FDCPA accordingly.

The distinction between a creditor and a debt collector lies precisely in the language of § 1692a(6)(F)(iii). For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired.[3] The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-8 (6th Cir. 1996); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). This interpretation of the Act is supported by Congress's intent in passing it.

> This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or *mistaken facts*. This bill will make collectors behave responsibly towards people with whom they deal.

H.R. Rep. No. 131, at 8 (emphasis added); *see also* S. Rep. 95-382, 95th Cong. 1st Session 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698 (1977) ("[T]he committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]").

---

[3] Our analysis of § 1692a(6) parallels the holdings of other circuits that have addressed the issue. *See, e.g.*, *FTC v. Check Investors, Inc.*, 502 F.3d 159, 171-73 (3d Cir. 2007); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not.").

Thus, we do not accept Defendants' argument that, even if they are not creditors under the Act, neither are they debt collectors. It would thwart the purpose of the Act to find that a non-originating debt holder is neither a creditor nor a debt collector based on that defendant's adoption of contradictory factual positions. Defendants may not so easily define themselves out of FDCPA coverage. Echoing the Third Circuit's sentiment, "[a]lthough the argument is rather clever, it is wrong. It would elevate form over substance and weave a technical loophole into the fabric of the FDCPA big enough to devour all of the protections Congress intended in enacting the legislation." *Check Investors*, 502 F.3d at 172-73.[4]

The same is true of a creditor who uses any name other than his own which would indicate that a third person is attempting to collect the debt. *See* 15 U.S.C. § 1692a(6) ("Notwithstanding the exclusion provided in clause (F) of the last sentence of this paragraph, the term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."). No such creditor may escape liability by alleging that it is neither a creditor nor a debt collector and thus not subject to the FDCPA.

As to Lisa Bridge, the SAC properly alleges that Defendants are categorized as debt collectors under the Act. First, the Bridges have made allegations addressing all elements of the statutory definition of debt collector under the first sentence of § 1692a(6). The Bridges alleged that: (1) there is no assignment of record to establish

---

[4]This conceptual principle finds support elsewhere in the FDCPA. Although there is no statutory definition of "loan servicer" under the Act, a loan servicer will become a debt collector under § 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired. In fact, Ocwen Bank is well aware of this analysis and the resulting construction of § 1692a(6):

> Plaintiff is correct that the §1692a(6)(F)(iii) exception, which may operate to remove a loan servicer from the definition of a 'debt collector', does not apply if the loan was in default at the time it was acquired by the servicing company, or if the servicing company treated it as such, regardless of the loan's actual status. In the instant case, Plaintiff alleges Ocwen treated Plaintiff's loan as if it were in default from the time it began to service the loan. Thus, taking all factual allegations in the Complaint as true, Plaintiff's claim does not fail pursuant to the 15 U.S.C. § 1692a(6)(F)(iii) exception.

*Shugart v. Ocwen Loan Servicing*, LLC, No. 2:09-cv-1123, 2010 U.S. Dist. LEXIS 103019, *10-11 (S.D. Ohio Sept. 28, 2010) (internal citations omitted).

that Deutsche is a creditor or that Ocwen Bank is a loan servicer, thus making the alleged debt "due another"; (2) Ocwen Bank made persistent efforts to collect a debt, i.e., mortgage payments; and, (3) the Defendants used the mails as well as an instrumentality of interstate commerce, i.e., the telephone system, in the collection of debts.

Second, the Bridges have alleged that they received collection letters regarding Lisa Bridge's mortgage from an agent or arm of Defendants, the law firm of Moss, Collis, Stawiarski, Morris, Schneider and Prior, LLC. For the purposes of a 12(b)(6) motion, this allegation may also bring Defendants within the statutory definition of a debt collector under the second sentence of § 1692a(6) ("Notwithstanding the exclusion provided in clause (F) of the last sentence of this paragraph, the term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.").

Third, the Bridges have alleged the Defendants are debt collectors notwithstanding the definitional exclusion contained in § 1692a(6)(F)(iii) (excluding activity concerning a debt which was not in default at the time it was obtained) because the Defendants sought collection of Lisa Bridge's "debt" which they claimed was already in default at the time they obtained it from Aames.

Therefore, we find Defendants' argument on appeal, that even if Deutsche is not a creditor there is no allegation that it is a debt collector, is contradicted by the allegations of the SAC.

Further, we find disingenuous Ocwen Bank's argument that "Ocwen also is not a debt collector because servicing transferred to Ocwen on May 1, 2002, and Plaintiffs themselves allege that the account was not in default at that time." (R. 98 at 7). We note this argument is exemplary of an unsettling trend in FDCPA claims. Defendants seek to have it both ways: after having engaged in years of collection activity *claiming a mortgage is in default*, Defendants now seek to defeat the protections of the FDCPA by relying on Plaintiffs' position throughout those years that the *mortgage is not in default*.

As noted in the analysis of the Third Circuit, FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended.

The legislative history of the FDCPA indicates that Congress intended to address the very situation the Bridges allege. A Senate Report states that the purpose of the Act's debt verification is to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rpt. 95-382 at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. A House Report noted congressional intent to regulate collection activities based on either "mistaken identity or mistaken facts." H.R. Rep. No. 131, at 8. Congress recognized that computer errors are a related problem, and that "[c]onsumers who are victims of computer error find it extremely difficult to obtain correction of records. This may lead to collection agency harassment." *Id.*; *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) ("[T]he FDCPA is extraordinarily broad, crafted in response to what Congress perceived to be a widespread problem.") (citations omitted). Based on the Bridges' allegations, computer error may be the case here. On the other hand, it may be the most benign explanation available. Regardless, the Act was intended to protect victims of all such errors, irrespective of the collector's intent.

In addition, the Federal Trade Commission's Staff Commentary on the FDCPA is instructive. *See Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (6th Cir. 2011) (finding the same Staff Commentary persuasive in construing the FDCPA). There, the FTC states that a "debt collector must verify a disputed debt even if he has included proof of the debt with the first communication, because the section is intended to assist the consumer when a debt collector inadvertently contacts the wrong consumer at the start of his collection efforts." FTC Staff Commentary, 53 Fed. Reg. 50097–02, 50106 (Dec. 13, 1988).

The statutory language itself confirms that Congress intended to provide protection for those persons being dunned in error. *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999) ("When interpreting the FDCPA, we begin with the language of the statute itself."). Throughout the Act, statutory terms are defined by the satisfaction of

some condition or the *alleged* satisfaction of some condition. For example, a consumer is a person obligated or *allegedly* obligated to pay any debt. 15 U.S.C. § 1692a(3) (emphasis added). A debt is any obligation or *alleged* obligation. 15 U.S.C. § 1692a(5) (emphasis added). A debt collector is a person who, *inter alia*, collects or attempts to collect debts "owed or due or *asserted to be* owed or due another." 15 U.S.C. § 1692a(6) (emphasis added). Throughout the FDCPA coverage is based upon actual or merely alleged debt. Thus, a debt holder or servicer is a debt collector when it engages in collection activities on a debt that is not, as it turns out, actually owed.[5] This stands to reason since the pursuit of collection activities presupposes that the collector alleges or asserts that the subject of those activities is obligated.[6]

Under the "consumer" definition, the Eighth Circuit has recently reinforced the application of the FDCPA to individuals who are mistakenly dunned by debt collectors. In *Dunham v. Portfolio Recoveyr Associates, LLC*, the court reversed the determination below that the FDCPA does not provide a remedy to "non-debtors mistakenly targeted by debt-collection efforts." 663 F.3d at 1001. Parallel to the argument advanced here, there it was claimed that Congress intended to exclude protection for "consumers" mistakenly contacted by a debt collector as they would not come within the definition of persons "obligated or allegedly obligated to pay any debt" under § 1692a(3). The Eighth Circuit made short shrift of that argument noting:

> Under PRA's interpretation of the Act, a person who has been abused by a debt collector's harassing tactics, which the FDCPA generally prohibits, could not invoke the protection of the FDCPA if the debt collector contacted the individual by mistake. This interpretation would

---

[5] This construction is wholly consistent with our decision in *Montgomery*, 346 F.3d at 697, in which the plaintiff was not a "consumer" because he was neither obligated nor allegedly obligated to pay any debt; plaintiff admitted that it was his mother, not him, who was obligated on the loan. *Accord King v. IB Prop. Holdings, Acquisition*, 635 F. Supp. 2d 651, 658 (E.D. Mich. 2009) (where plaintiff was not a "consumer" because his father was the only person obligated or allegedly obligated on the debt).

[6] Of course, this construction of the Act should in no way be interpreted to diminish the role of the least sophisticated consumer standard in assessing whether a particular debt collector's actions violate the Act. *See Barany-Snyder*, 539 F.3d at 333 (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)). For example, as one court in this Circuit has held, even the least sophisticated consumer would understand that a debt collector was not attempting to collect a debt from him when the collector admitted his previous collection calls were due to computer error and immediately corrected the mistake. *See Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541 (E.D. Mich. 2009).

> read the phrase "allegedly obligated" to only apply to those who actually owe or owed the specific debt at issue, despite whether a debt collector asserted a person owes the specific debt. PRA's position too narrowly constricts the plain meaning of "alleged."

*Id.* at 1002 (paragraph break omitted). The court then determined that a "consumer" under the FDCPA includes those who are mistakenly alleged to have owed a debt.

As we have previously noted, "[t]he Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute." *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). Our actions are guided by the hand of Congress, and thus we apply the Act broadly according to its terms. Our sister circuits have done the same. *See, e.g.*, *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997) (noting that "the plain language of the Act defines 'debt' quite broadly"). Therefore, we hold that the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention. Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error. A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor. To hold otherwise would defy the clear congressional mandate we are charged with upholding.

As to William Bridge, Plaintiffs alleged that Defendants have been dunning him in violation of the FDCPA as he is not obligated on Lisa Bridge's mortgage. Defendants have not responded to Mr. Bridge's allegations and the district court dismissed his claims without analysis. It appears that Deustsche is not a creditor and, similarly, that Ocwen Bank is not a loan servicer as to Mr. Bridge. We specifically note that Congress intended to protect people like Mr. Bridge in enacting the FDCPA. *See* H.R. Rep. No. 131, at 8 ("Another group of people who do not owe money, but may be deliberately

harassed are the family . . . of the consumer. These people are also protected by this . . . bill."). And, as alleged in the SAC, Mr. Bridge is included in the protections for such persons in the prohibitions of 15 U.S.C. § 1692d, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt." (emphasis added).

## B. Sufficiency of Plaintiffs' FDCPA Allegations

The FDCPA forbids a debt collector from, *inter alia*: communicating with a third party subject to limited exceptions, 15 U.S.C. § 1692c(b); continuing to communicate with a consumer following a written request to cease communication, 15 U.S.C. § 1692c(c); "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number," 15 U.S.C. § 1692d(5); and, falsely representing the amount of a debt, 15 U.S.C. § 1692e(2)(A). The Bridges, in their SAC, alleged that Defendants have violated each of these provisions.

The Bridges have stated a claim under the FDCPA. They allege that there is no assignment of record to establish that Deutsche is a creditor or that Ocwen Bank is a loan servicer; that Ocwen Bank made persistent efforts to collect a debt, i.e., mortgage payments; and that the Defendants used the mails as well as an instrumentality of interstate commerce, i.e., the telephone system, to do so. Thus, they have sufficiently alleged that the Defendants are debt collectors, rather than creditors or loan servicers. *See Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1073 (D. Colo. 2009) (accepting for purposes of Rule 12(b)(6) an allegation that defendant was a debt collector due to its failure to legally obtain the right to collect a debt).

They further allege that Defendants have impermissibly communicated with third parties concerning Lisa Bridge's asserted outstanding debt; that Defendants have ignored their repeated requests to cease communications; that Defendants have targeted their personal telephone lines with the intent to annoy, abuse or harass them; and that they have falsely reported the amount of the debt the Bridges owe (or don't owe) to the credit

reporting agencies and to other parties. These allegations, which must be taken as true, are more than sufficient to state a plausible claim for relief based on the FDCPA.

## IV. CONCLUSION

Because the Bridges' allegations in the SAC, accepted as true, are sufficient to state a claim for relief under the FDCPA that is plausible on its face, we hold that the district court erred in dismissing those claims. Accordingly, we reverse the district court's judgment as to the Bridges' FDCPA claims and remand the action for further proceedings consistent with this opinion.

—————————————————————

**CONCURRING IN PART**

—————————————————————

CLAY, Circuit Judge, concurring in part.  Because the district court dismissed this action at the pleadings stage, the issue before our Court is straightforward: whether a complaint adequately pleaded facts to state a claim under a federal statute.  The resolution of this appeal requires only that we look to the statute under which the action is brought, in this case the Fair Debt Collection Practices Act (the FDCPA), 15 U.S.C. §§ 1692–1692p, to determine the elements of a cause of action; we then consider whether *pro se* Plaintiffs' second amended complaint properly asserted those elements, supported by sufficient factual allegations.  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Contrary to the majority opinion, it is unnecessary to indulge in a lengthy discussion of statutory construction or legislative history or to consider the policies and purposes that Congress sought to promote when passing the FDCPA.  I turn now to the resolution of the issue presented to us.

**A.        FDCPA Civil Actions**

Under the FDCPA, a plaintiff may bring a civil action against a debt collector who engages in "abusive debt collection practices."  15 U.S.C. §§ 1692(e), 1692k. Relevant to Plaintiffs' claims, the statute provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e; *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332–33 (6th Cir. 2008).  As is plain from the statutory text, liability under the FDCPA attaches only to a defendant that qualifies as a "debt collector," which is a statutorily defined term.  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 435–36 (6th Cir. 2008). The FDCPA definition of "debt collector" provides, in relevant part:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). The definition of debt collector "does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (stating that the statutory definition of debt collector "does not include the consumer's creditors" (internal quotation marks omitted)); *see also* 15 U.S.C. § 1692a(4) (defining a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed").

### B.      Plaintiffs' Second Amended Complaint

Count One of Plaintiffs' second amended complaint alleged that Defendants violated the FDCPA. Defendants successfully sought dismissal of this count on the basis that Plaintiffs did not adequately plead an element of a FDCPA claim, namely, that Defendants were "debt collectors" within the meaning of the statute. The only issue to be decided on appeal is whether Plaintiffs adequately pleaded that Defendant Ocwen Federal Bank ("Ocwen FB"), Defendant Ocwen Loan Servicing ("Ocwen LS"), and Defendant Deutsche Bank are "debt collectors."[1]

---

[1] Plaintiffs' allegations pertaining to the actions of the law firm of Moss Codilis Stawiarski Morris Schneider & Prior LLP are immaterial to the present issue. Plaintiffs' pleadings conflate the law firm with Defendants Deutsche Bank and Ocwen FB/LS without factually supporting that conflation. Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs may in fact have a cognizable claim against Moss Codilis under the FDCPA. But Moss Codilis is not a Defendant in this action, and there is nothing in the pleadings to support agency liability, to suggest that Moss Codilis is not an independent firm hired by Aames or Defendants to collect debt, or to demonstrate that Defendants were acting under the name of Moss Codilis.

### 1.        Defendant Deutsche Bank

The second amended complaint fails to adequately plead that Defendant Deutsche Bank is a "debt collector" within the meaning of the FDCPA. The complaint does not allege, even in conclusory fashion, that Deutsche Bank is a "debt collector" within the meaning of the FDCPA. The pleadings aver that the entity is "a federally chartered savings bank engaged in discount loan origination and acquisition of residential and commercial lending" and that the Ocwen Defendants are a division of the bank. Deutsche Bank is further alleged to be "a trustee for Aames Mortgage Trust 2002-1 Mortgage Pass-Through Certificates," which we may presume is a special purpose vehicle created by Aames to securitize the mortgage backed bond in which the Plaintiffs' debt had been placed. None of these allegations, if true, would subject Deutsche Bank to liability as a "debt collector." This is because Plaintiffs make no plausible factual allegation that Deutsche Bank "principally" or "regularly" collects debts, that it attempts to collect debts under an unknown name, or that it principally enforces security interests. *See* 15 U.S.C. § 1692a(6). Rather, the complaint alleges Deutsche Bank to be a bank engaged in loan origination and acquisition, and, in this case, the trustee to a trust in which the mortgage is contained. Accordingly, the district court did not err in dismissing the FDCPA claim as to Defendant Deutsche Bank pursuant to Rule 12(b)(6).

### 2.        Ocwen Defendants

In contrast to the allegations with respect to Defendant Deutsche Bank, the second amended complaint does label Ocwen FB and Ocwen LS as "debt collectors" under the FDCPA. Ocwen FB is alleged to be "a federally chartered savings bank engaged in discount loan acquisitions and residential and commercial lending." Ocwen LS is alleged to "'service' residential mortgage loans acquired by Ocwen Bank by assignment or transfer from other mortgage companies." (Sec. Am. Compl. ¶ 4.) Ocwen LS is alleged, alternatively, to be "a federally chartered savings bank engaged in discount loan acquisitions and residential and commercial lending," as a division of Defendant Deutsche Bank.

As an initial matter, although the second amended complaint labels the Ocwen Defendants as debt collectors, that allegation is plainly a legal conclusion that is not entitled to be credited as true on a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks, citations, and alterations omitted)). The operative question is therefore whether "the [remaining] factual allegations" in the pleading "plausibly suggest an entitlement to relief" by demonstrating that the Ocwen Defendants are debt collectors. *Id.* at 1951; 15 U.S.C. § 1692a(6).

For the most part, Plaintiffs, the district court, and the majority consider the actions and business of Ocwen LS and Ocwen FB collectively, which ignores an important distinction in the context of the FDCPA. I therefore consider the allegations against them separately.

### a.        Defendant Ocwen Loan Servicing

In the second amended complaint, Defendant Ocwen LS is alleged to conduct "substantial business" in Ohio and to constitute a special purpose entity "established to 'service' residential mortgage loans acquired by Ocwen Bank." The complaint does not define what activities constitute the "'service' [of] residential mortgage loans," nor does the complaint make any allegation that Ocwen LS regularly or principally collects debts. However, reading the complaint liberally, one may plausibly infer that Ocwen LS is a debt collector. According to Plaintiffs' allegations, Aames notified Plaintiffs that they were in default of their mortgage by letter of April 20, 2002 due to the untimely April payment, and the mortgage transfer from Aames to Ocwen LS was effective on April 30, 2002, after the mortgage was already in default. Ocwen LS thus attempted to collect on the mortgage and treated it as if it was in default from the time that the servicer acquired it; Ocwen LS then continued to treat the loan as defaulted when it also failed to credit Plaintiffs for the May bill following their double April payment. *See* 15 U.S.C. § 1692a(6)(F)(iii).

A definition of a "loan servicer" is available under the related federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617, which defines "loan servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3). Based on this definition, and in light of its corporate name, principal business, the timing of the transfer, Ocwen LS's treatment of the loan as in default, and Ocwen LS's debt collection activities against Plaintiffs, we may plausibly infer that Plaintiffs alleged that Ocwen LS is a debt collector within the meaning of the FDCPA. *See Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 118–19 (3d Cir. 2007); *Shugart v. Ocwen Loan Servicing*, 747 F. Supp. 2d 938, 942–43 (S.D. Ohio 2010) (addressing a claim against Ocwen Loan Servicing); *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1073 (D. Colo. 2009) (also against Ocwen Loan Servicing).

Therefore, because Plaintiffs have offered sufficient factual allegations to demonstrate that Ocwen LS is a debt collector within the meaning of the FDCPA, I agree that the dismissal of Count One of Plaintiffs' complaint should be reversed with respect to Defendant Ocwen LS.

### b.    Defendant Ocwen Federal Bank

However, I find that Plaintiffs have failed to adequately plead that Defendant Ocwen FB is a "debt collector." Neither the legal conclusion as to the bank's status, nor the description of the bank as "a federally chartered savings bank engaged in discount loan acquisitions and residential and commercial lending," plausibly suggest that the bank regularly or principally collects debts within the meaning of 15 U.S.C. § 1692a(6). I also find no authority that suggests that a bank holding company of a loan servicer may also be held liable for the servicer's actions. Because Plaintiffs have failed to distinguish between the parties, it is difficult for this Court to parse the particular factual allegations made against Ocwen FB from those made against Ocwen LS. To the extent that Plaintiffs' claim against Ocwen FB is based merely on the fact that Ocwen FB is the holding company of Ocwen LS, I would find that Plaintiffs have failed to properly plead that Ocwen FB is a debt collector under the FDCPA.

In conclusion, Plaintiffs failed to adequately plead that Deutsche Bank and Ocwen FB are "debt collectors" because Plaintiffs did not assert that those Defendants are principally or regularly engaged in the collection of debts.  However, I find that Plaintiffs adequately alleged that Ocwen LS is a debt collector.  I therefore concur in the judgment only with respect to the reversal of the district court's dismissal of Plaintiffs' FDCPA claim against Defendant Ocwen Loan Servicing.