NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0063n.06

Case Nos. 20-2204/21-2972

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 31, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| WENDY B. ADELSON, | ) | |
| Plaintiff - Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| OCWEN LOAN SERVICING, LLC, nka PHH Mortgage Corporation, successor by merger, and HSBC BANK USA, NA, individually and as Trustee on behalf of Ace Securities Home Equity Loan Trust Series 2007-HE1, asset backed pass-through certificates (20-2204 & 21-2972); TROTT LAW, P.C., MICHAEL MCDERMOTT, and HEIDI MYSAZK (21-2972), | ) ) ) ) ) ) ) ) ) ) | OPINION |
| Defendants - Appellees. | ) ) | |

Before: MOORE, CLAY, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. This case is another—and we think the final—chapter of a 15-years-long property dispute. Wendy Adelson stopped paying the mortgage on her house in 2007. In 2019, HSBC foreclosed on the house. Adelson challenged this foreclosure in district court. But the district court found that she failed to state a claim for relief. We agree and affirm.

**I.**

In September 2006, Adelson accepted a $178,500 loan from Sebring Capital Partners, LP ("Sebring") to help finance her purchase of a home in Lake Orion, Michigan. The loan was secured by a mortgage. Under the original agreement, Mortgage Electronic Registration Systems, Inc.

("MERS"), as nominee for Sebring, was the mortgagee. And MERS later assigned the mortgage to HSBC Bank USA N.A. ("HSBC").

In December 2006, Adelson received a notice from Ocwen Loan Servicing, LLC ("Ocwen"). This notice informed her that, as most financial institutions do from one time to another, Sebring transferred its right to collect payments to Ocwen. The notice said that Adelson should direct her monthly mortgage payments to Ocwen. Around that same time, Sebring closed its doors. While Adelson initially made several monthly mortgage payments, she began to question both the amount she owed and Ocwen's authority to collect. So she stopped making her monthly mortgage payments to Ocwen in April 2007. She alleges that, rather than paying her monthly mortgage payments to Ocwen, she deposited them into an escrow account that she established.

Because Adelson stopped making her payments, Ocwen sent Adelson a notice of default and ultimately referred the loan to foreclosure. HSBC published a foreclosure notice and scheduled a sheriff's sale. Adelson contacted Ocwen's attorneys, informed them that she was not in default, faxed copies of her payment receipts and escrow account, and "demanded" that her property be removed from the foreclosure sale. (Compl., ECF No. 1-1, PageID 20–21.) Ocwen did not remove her property from the sale.

Then came years of litigation. First, in June 2007, Adelson filed a complaint in state court to fight against the upcoming foreclosure proceedings. Through a series of maneuvers, the case was removed to the Eastern District of Michigan and then consolidated for pretrial purposes with pending multi-district litigation in the Northern District of Illinois. This litigation centered on Ocwen's debt collection practices. The MDL settled in 2010, with Adelson as a member of the class. The settlement agreement released Ocwen from certain forms of liability, including future claims related to Ocwen's "mortgage servicing activities" and "debt collection activities," but not

"statutory or common law rights against foreclosure . . . ." (MDL Settlement, ECF No. 1-1, PageID 174.)

Adelson moved to vacate the MDL judgment in 2014. The district court denied that motion, and the Seventh Circuit dismissed Adelson's appeal for lack of appellate jurisdiction. *See Adelson v. Ocwen Fin. Corp.*, 621 F. App'x 348, 352 (7th Cir. 2015) (order).

In 2015, Adelson's individual case was sent back to the Eastern District of Michigan. *See id*. There, Adelson challenged HSBC's legal authority to foreclose on her property and Ocwen's servicing and debt-collection practices. The district court dismissed the complaint, and, in 2018, we affirmed. *Adelson v. Ocwen Fin. Corp.*, No. 17-1917, 2018 WL 7226966 (6th Cir. Aug. 20, 2018) (order). We note two findings from this part of the saga. First, because Adelson released certain claims related to the servicing and debt-collection practices of Ocwen (and HSBC and other Ocwen affiliates by extension), many of her claims were barred by res judicata. *Id.* at *4–5. Second, we found that the assignment between MERS and HSBC was valid, so HSBC was a proper party to initiate foreclosure proceedings. *Id.* at *6–8.

Following the resolution of that appeal, Ocwen again initiated foreclosure proceedings. Ocwen, through its lawyers at Trott Law P.C. ("Trott"), sent Adelson a letter. This November 2018 letter stated that "[t]his matter was referred to [Trott] to foreclose the mortgage." (Trott Letter, ECF No. 1-1, PageID 224.) The foreclosure sale was later set for February 26, 2019. But on February 22, 2019, Adelson filed for bankruptcy "to stop the sale." (Compl. ¶ 46, ECF No. 1-1, PageID 25.) The bankruptcy petition was dismissed 41 days later because Adelson failed to file required documents.

3

Throughout the bankruptcy proceedings, the foreclosure sale was adjourned. Finally, on May 7, 2019, HSBC purchased the property for $457,190.68 at a Sheriff's sale. Adelson alleges that she did not receive notice of the Sheriff's sale until June 15, 2019.

Nearly six months after the Sheriff's sale, Adelson filed a complaint against HSBC, Ocwen, Trott, and two of Trott's attorneys challenging the validity of the 2019 sale. The district court dismissed all claims. Adelson timely appealed.

**II.**

We review a ruling on a motion to dismiss de novo. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We "accept[] all well-pled factual allegations as true" but "'need not accept as true . . . unwarranted factual inferences[] and conclusory allegations . . . .'" *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)).[1]

---

[1] We decline to review a claim that Adelson didn't properly preserve for our review. She claims that HSBC needed to file a counterclaim for judicial foreclosure when she brought her original wrongful foreclosure claim in 2007. She asserted this for the first time in her response to a motion to dismiss. The magistrate judge recommended rejecting this new claim on several grounds, including that Michigan law entitled HSBC to foreclose by advertisement rather than through the judicial process, Adelson had not cited any authority in support of her argument, and relevant authority cut against her position. In Adelson's objections to the magistrate's report and recommendation, she simply disputed the correctness of the recommendation by asserting that HSBC's foreclosure claim was "logically related" to her earlier wrongful foreclosure claim. So she failed to preserve this claim for our review. *See Miller v. Curie*, 50 F.3d 373, 380 (6th Cir. 1995) (Objections that "dispute[] the correctness of the magistrate's recommendations but fail[] to specify the findings [] believed [to be] in error" amount to "general objections."); *Smith v. Detroit Fed'n of Teachers Loc.*, 231, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate

**III.**

**A. Foreclosure by Advertisement, Quiet Title, and Fraudulent Conveyance**

Adelson brings three claims challenging the mechanics of the 2019 foreclosure proceedings. First, she argues that HSBC (via Ocwen) did not comply with the statutory requirements necessary to carry out foreclosure by advertisement. Second, she claims that HSBC fraudulently conveyed her property. And lastly, she claims that, because the foreclosure sale was invalid, she should be granted quiet title to the property.

We begin with her argument that HSBC and Ocwen didn't comply with certain statutory requirements to foreclose by advertisement. Michigan's foreclosure-by-advertisement rules detail certain steps that the mortgagee—HSBC in this case—must go through to validly foreclose. *See* Mich. Comp. Laws §§ 600.3201, 600.3204. They also provide for certain rights once the sale is completed. For example, the mortgagor—here, Adelson—may redeem the property during the six-month period after the sale. *See* Mich. Comp. Laws § 600.3240(8); *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013). When the six months is up, the mortgagor's "'right, title, and interest in and to the property' are extinguished." *Conlin*, 714 F.3d at 359 (quoting *Piotrowski v. State Land Off. Bd.*, 4 N.W.2d 514, 517 (Mich. 1942)); *see* Mich. Comp. Laws § 600.3236.

So then, what can a mortgagor do besides redeem the property? Because the scheme was intended to "impose order" and "giv[e] security and finality to the purchasers of foreclosed properties," the mortgagor's ability to challenge the foreclosure is limited. *See Conlin*, 714 F.3d at 359. After the statutory redemption period lapses, courts can entertain setting aside a foreclosure

---

review; making some objections but failing to raise others will not preserve all the objections a party may have.").

sale only if the mortgagor makes a "'clear showing of fraud[] or irregularity.'" *Id.* (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)); *Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007). And the alleged misconduct must relate to the foreclosure procedure itself. *Conlin*, 714 F.3d at 360.

In Michigan, "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012). So for us to set a foreclosure aside, mortgagors must also show that "they were prejudiced by" a failure to comply with the foreclosure-by-advertisement rules. *Id*. A mortgagor is prejudiced when "they would have been in a better position to preserve their interest in the property absent [the mortgagee's] noncompliance with the statute." *Id*. Factors Michigan courts have considered in evaluating prejudice include: (1) whether mortgagors "acted promptly after they became aware of the facts on which they based their complaint," and (2) whether mortgagors "made an effort to redeem the property during the redemption period . . . ." *Diem v. Sallie Mae Home Loans, Inc.*, 859 N.W. 2d 238, 242–43 (Mich. App. 2014) (cleaned up) (citations omitted).

Under this framework, the record shows that Adelson has not stated a claim for wrongful foreclosure by advertisement. The sheriff's sale occurred on May 7, 2019. So Adelson had until November 7, 2019, or six months, to redeem the property. *See* Mich. Comp. Laws § 600.3240(8). She does not allege that she redeemed—or tried to redeem—the property, and instead filed suit a few weeks before the November redemption deadline. Because the statutory redemption period lapsed, and because "the filing of a lawsuit is insufficient to toll the redemption period," she must

make a "clear showing of fraud or irregularity" and that she was prejudiced by those irregularities. *Conlin*, 714 F.3d at 360–61 (quotation marks and citations omitted).[2]

Adelson makes two main arguments. Neither persuade us. First, she questions HSBC's adherence to Michigan's adjournment notice procedures. Recall that the foreclosure sale was noticed for February 26, 2019 but was adjourned pending bankruptcy procedures and subsequently took place on May 7, 2019. Citing a Michigan statute for notice of foreclosure, Adelson argues that HSBC did not comply with Michigan's adjournment notice procedures because it did not post notices of adjournment for the weeks between February 26 and May 7. *See* Mich. Comp. Laws § 600.3220 (requiring weekly publication of notices of adjournment in newspaper containing the original notice of sale for any adjournment longer than one week).

But HSBC complied with Michigan's adjournment notice procedures by publishing notices of adjournment each week in the Detroit Legal News. (Mot. to Dismiss, ECF No. 10-2, PageID 370-387; *see* Sheriff's Deed, ECF No. 1-1 PageID 270 (sheriff's deed noting that the "sale [was] adjourned from February 26, 2019 to May 7, 2019").) Contrary to what Adelson asserts, Michigan Compiled Laws § 600.3220 does not require HSBC to serve other kinds of foreclosure notices.

---

[2] Adelson argues that the redemption period should have been one year instead of six months because the property qualifies as an agricultural property under Michigan Compiled Laws § 600.3240(11). She alleges that she uses the property as a "self-funded animal rescue." (Compl. ¶ 127, ECF No. 1-1, PageID 39.) Michigan Compiled Laws § 600.3240(16) explains that "there is a presumption that the property is *not* used for agricultural purposes" if, before the foreclosure sale, the mortgagor doesn't provide "proof [of a] . . . a schedule F to the mortgagor's federal income tax form 1040 for the year preceding the year in which the proceedings to foreclose the mortgage were commenced and records an affidavit . . . stating that the proof has been delivered [to the foreclosing party]." Signaling some awareness of this presumption, she alleges that Defendants "had full and complete knowledge that the property falls under the (schedule F) provision . . . ." (Compl. ¶ 127, ECF No. 1-1, Page ID 39.) But she doesn't allege that she provided HSBC with proof of a schedule F and affidavit before the sale, so there is a presumption that the property is not used for agricultural purposes. Mich. Comp. Laws § 600.3240(16); *see Hebler v. Wells Fargo Bank N.A.*, 380 F. Supp. 3d 684, 690 (W.D. Mich. 2019). And she fails to plead facts to rebut the presumption that the property is not used for agricultural purposes. So this argument fails.

*See Mayer v. Wells Fargo Bank, N.A.*, No. 16-2217, 2017 WL 7806616, at *2 (6th Cir. Nov. 1, 2017) (order) ("Although [mortgagor] claims he did not receive notice of the adjournment of the sheriff's sale, the record establishes that [mortgagee] complied with Michigan's adjournment notice procedures by publishing notices of adjournment each week."). So HSBC followed Michigan's adjournment notice procedures.[3,4]

Second, Adelson alleges that the deputy sheriff who conducted the foreclosure proceedings "wasn't deputy sheriff" at the time of the foreclosure sale because his oath of office wasn't filed and recorded at the Oakland County Clerk's office before the foreclosure sale. (Pet. Br. at 34–36.) Appointments of deputy sheriffs in Michigan "shall be in writing . . . and shall be filed and recorded in the office of the clerk of the county; and every such . . . deputy shall, before he enters upon the

---

[3] Adelson alleges that Defendants violated 11 U.S.C. § 362(a). We have held that under that provision, "filing a petition for bankruptcy operates as a 'stay' of actions that could have been filed against the [person] to recover claims . . . and the debtor's property cannot be repossessed or foreclosed on . . . ." *In re Global Technovations Inc.*, 694 F.3d 705, 711 (6th Cir. 2012). Her argument is confusing, but she seems to allege that the adjournment notices were attempts to collect a debt in violation of the bankruptcy stay, as opposed to efforts to respect the stay (by postponing the foreclosure sale). But the adjournment of a foreclosure sale does not violate a bankruptcy stay, and, in fact, shows that the party looking to foreclose is respecting the stay. *See Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 508–09 (E.D. Mich. 2004), *aff'd*, 192 F. App'x 369 (6th Cir. 2006); *Stein v. U.S. Bancorp*, No. 10-14026, 2011 WL 740537, at *6–7 (E.D. Mich. Feb. 24, 2011). So this argument fails.

[4] Adelson also claims that HSBC did not follow certain notice procedures outlined in the mortgage contract that she signed in 2006. Recall that HSBC, via Ocwen, sent Adelson a notice of default in April 2007, and HSBC, via Ocwen and Trott, sent Adelson a notice of acceleration in November 2018 after her last round of litigation with HSBC and Ocwen concluded. She argues that she had a right to receive a renewed notice of default before receiving the 2018 notice of acceleration. But a plain reading of the mortgage contract provision that she invokes doesn't suggest a renewed notice of default is necessary. (Mortgage Contract ¶ 22, ECF No. 1-1, PageID 82) ("Lender shall give notice to Borrower prior to acceleration *following Borrower's breach* of any covenant or agreement in this Security Instrument . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument *without further demand* and *may invoke the power of sale* and any other remedies permitted by Applicable Law.") (emphases added)).) So this argument also fails.

duties of his office, take the oath prescribed by [the Michigan Constitution]." Mich. Comp. Laws § 51.73. Adelson points to Exhibit 29 of her complaint, which looks to be a copy of the deputy sheriff's oath, taken on December 21, 2016, and stamped with "received for filing" by the Oakland County Clerk on September 11, 2019. (Sheriff's Oath, ECF No. 1-1, PageID 296.) At least one Michigan court has held that a violation of a similar appointments clause "would not amount to a defect or irregularity in the foreclosure proceeding itself." *New Jerusalem Deliverance Church v. Evangelical Christian Credit Union,* No. 309571, 2014 WL 238474, at *2 (Mich. Ct. App. Jan. 21, 2014) (per curiam).

But even if it did, and assuming there was a defect in the sheriff's appointment or with posting the notices of adjournment, Adelson hasn't plausibly alleged that she was prejudiced. Or, put another way, she can't show that she "would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance with the statute." *Kim*, 825 N.W.2d at 337. Adelson's claim of prejudice focuses on circumstances that preceded the sale. She claims that she was prejudiced by "being unaware of the foreclosure sale" and was "deprived [of] any opportunity to respond to the foreclosure proceedings prior to any sale . . . ." (Compl. ¶ 152, ECF No. 1-1, PageID 44; Pet. Br. at 18.)

These conclusory statements are belied by other evidence in the complaint. To start, she has been litigating over the property for 15 years. More specifically, she alleges that in November 2018 she responded to a letter from Trott (the law firm acting on behalf of Ocwen) that told her that Ocwen sought to foreclose the mortgage. She admits that, a few months later, she filed for bankruptcy protection to "stop the sale." (Compl. ¶ 46, ECF No. 1-1, PageID 25.)

And even assuming that, as she alleges, she did not have notice of the May 7 sale until June 15 and was under the impression that the sale was cancelled (and not just adjourned pending the

bankruptcy proceedings), a June 15 notice date still gave her more than four months to redeem the property. She doesn't allege that she made any effort to redeem the property. *See Sweet Air Inv.*, 739 N.W.2d at 662 (finding no prejudice when plaintiff didn't try to redeem the property during the redemption period); *Nafso v. Wells Fargo Bank, NA*, No. 11-10478, 2011 WL 1575372, at *3 (E.D. Mich. Apr. 26, 2011) (explaining that a mortgagor cannot "show prejudice resulting from [] alleged defect[s] where he did not attempt to redeem the property and waited until the day before the redemption period expired to challenge the sheriff's sale"). Because Adelson cannot show that she would have been in a better position to preserve her interest in the property without the alleged defects, her prejudice argument fails.[5,6]

Next we turn to Adelson's fraudulent conveyance claim. It's confusing. She makes conclusory statements about Defendants' "scheme" to foreclose. At bottom, it seems that she's

---

[5] Adelson makes two more arguments for prejudice. First, she argues that, but for Ocwen's "accounting errors" when servicing the loan, she would have paid the loan, and HSBC wouldn't have foreclosed. (Pet. Br. at 17.) This is unrelated to the procedural aspects of the 2019 foreclosure proceedings and therefore cannot constitute prejudice. *Conlin*, 714 F.3d at 360 ("The misconduct must relate to the foreclosure procedure itself." (cleaned up) (citation omitted)). Second, she alleges that HSBC "overbid" for the property, and that prejudiced her. (Pet. Br. at 38–40.) But the exhibits in her complaint do not support this allegation. The November 2018 acceleration letter from Trott Law contains the total debt as inclusive of the principal balance, unpaid interest, late charges, and other fees under the mortgage, for a total of $445,627.80. The Sheriff's deed for the May 2019 mortgage sale says that the property sold for $457,190.68. Any argument that HSBC (or any bidder) should have only paid an amount equal to the principal balance in 2006, or an amount equal to what was due in 2007, ignores the fact that Adelson had not paid her mortgage in over a decade, and other charges and unpaid interest accrued as a result. And she does not allege facts in her complaint to support an allegation that HSBC applied an impermissible prepayment penalty. So these arguments for prejudice also fail.

[6] Adelson also argues that the foreclosure proceeding is barred by various statutes of limitations, and that the district court erred when determining that the proper statute governing foreclosure proceedings is Michigan Compiled Laws § 600.5803. But the district court is right. Michigan Compiled Laws § 600.5803 says: Foreclosure proceedings must "commence[] . . . 15 years after the mortgage becomes due or within 15 years after the last payment was made on the mortgage." Adelson admits that she made her last payment on the Mortgage in April 2007. HSBC completed its foreclosure in May 2019, well before the 15-year limit.

challenging HSBC's authority to foreclose. But this Court previously found that HSBC had authority to foreclose. *Adelson*, 2018 WL 7226966, at *6–8 (holding that MERS validly assigned its interest in the property to HSBC and HSBC had authority to foreclose). And as we discussed, there's no statute of limitations problem.[7] Finding that the foreclosure proceedings didn't prejudice her and acknowledging that HSBC had authority to foreclose, her fraudulent conveyance and quiet title claims must fail.

### B. FDCPA Violation

Adelson alleges that Ocwen and Trott, the law firm representing Ocwen during the foreclosure proceedings, violated the Fair Debt Collection Practices Act ("FDCPA").

The FDCPA was created to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). "Debt" is defined as "*any obligation . . . to pay money* arising out of a transaction . . . for personal, family, or household purposes." *Id.* § 1692a(5) (emphasis added). And a "debt collector" is "any person" or business whose "principal purpose" "is the collection of any debts . . . ." *Id.* § 1692a(6). But "any business [whose] principal purpose is . . . the enforcement of security interests" is *not* regulated by the FDCPA's general terms, and is obligated only, when taking nonjudicial action, to ensure that there's a "present right to possession of the property," an intent to take possession, and no applicable property exemption by law. *Id.* §§ 1692a(6), f(6); *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036–38 (2019).

Collecting a debt and enforcing a security interest are not the same thing. When you buy a house, you typically need a loan and a mortgage. "Put simply, a loan obligates you to pay the

---

[7] Adelson has argued that she "mislabeled [this count] as fraudulent conveyance" and what she is really alleging is slander of title. (ECF No. 19, PageID 473; *see also* Pet. Br. at 67–68.) The distinction doesn't matter here because she has not alleged facts that establish that the Defendants' actions were improper, let alone malicious. *See Derbabian v. Bank of Am. N.A.*, 587 F. App'x 949, 958 (6th Cir. 2014) (discussing the elements of slander of title under Michigan law).

lender back [lender can collect a debt], while a mortgage gives the lender the ability to take your house if you fail to meet that obligation [lender can enforce a security interest]." *Keen v. Helson*, 930 F.3d 799, 801 (6th Cir. 2019).

Bottom line, Trott must comply only with § 1692f(6) if its principal purpose was to enforce a security interest—in this case, Adelson's house. Adelson's pleading suggests that enforcing a security interest was Trott's principal purpose. The November 2018 letter Trott sent to Adelson reads: "Dear Borrower(s): This office represents Ocwen Loan Servicing, LLC. This matter was referred to this office to foreclose the mortgage." (Trott Letter, ECF 1-1, PageID 224.) Adelson did not plead facts that suggest Trott acts as anything but a security-interest enforcer. And Adelson has not alleged any "*other* conduct" that would "potentially transform [Trott] into [a] general debt collector . . . ." *See Bates v. Green Farms Condo. Ass'n*, 958 F. 3d 470, 476–77, (2020) So Trott must comply only with §1692f(6). *See Obduskey*, 139 S. Ct. at 1036–38.

Under the §1692f(6) framework, we ask whether HSBC had a right to possession of the house, intended to take possession, and was allowed to do so. We say yes to all three. As discussed above, HSBC had the right to foreclose and timely did so. So Adelson's FDCPA claim against Trott must fail.

Finally, we turn to Adelson's FDCPA claim against Ocwen. A mortgage servicer can be a "debt collector" if it "acquired a debt in default or has treated the debt as if it were in default at the time of the acquisition." *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 362 (6th Cir. 2012); *see also Willison v. Nelnet, Inc.*, 850 F. App'x 389, 390 (6th Cir. 2021) (debtor not in default when loan servicer acquired her loans, so loan servicer is not a debt collector under the FDCPA)[8]. Ocwen

---

[8] In *Willison* we noted that *Bridge*'s holding "has been limited in whole or in part by the Supreme Court's decision in *Santander*." *Id.* at 392 n.1; *see Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720–22 (2017) (holding that "individuals and entities who regularly purchase debts

12

began servicing the loan in December 2006. And from "January 2007 through April 2007, [Adelson] made payments to Ocwen." (Compl. ¶ 16, ECF No. 1-1, PageID 20.) In April 2007, Adelson stopped making mortgage payments and Ocwen sent Adelson a notice of default. Because Ocwen did not "acquire[] a debt in default" and did not "treat[] the debt as if it were in default" until months after it acquired the debt, Ocwen is not a "debt collector" within the meaning of the FDCPA. *Bridge*, 681 F.3d at 362. So Adelson's FDCPA claim against Ocwen must also fail.[9]

### C. Intentional Infliction of Emotional Distress

Adelson claims intentional infliction of emotional distress ("IIED") from the foreclosure proceedings. Among other things, to make an IIED claim, Adelson must have alleged that Defendants engaged in "extreme and outrageous" conduct or conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (quotation marks and citation omitted).

In Michigan, "this standard is not satisfied when the plaintiff essentially claims that the defendant breached contracts with [her] in various ways and foreclosed on [her] property." *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 825 (6th Cir. 2012) (per curiam) (quotation marks and citation omitted); *see Brown v. Bank of N.Y. Mellon*, No. 1:10-CV-550, 2011 WL 206124, at *6 (W.D. Mich. Jan. 21, 2011). This is because "[i]n a contractual setting, a tort claim

---

originated by someone else and then seek to collect those debts for their own account" are not debt collectors under the FDCPA even if the purchased debt was already in default). "However, *Santander* did not discuss what impact, if any, its ruling had on a loan servicer who services a defaulted debt purchased by a non-originating debt holder." *Willison*, 850 F. App'x at 392 n.1. And of course it's irrelevant in a situation where, as we explain, Ocwen began servicing the debt prior to default. "Thus, it does not affect the resolution of this case." *Id.*

[9] Adelson raises the argument that Ocwen violated 12 U.S.C. § 2605(e)(3) for the first time to this Court, so we will decline to consider it. (Pet. Br. at 61.)

must be based instead on the breach of a duty distinct from the contract." *Chungag*, 489 F. App'x at 825 (quotation marks and citation omitted); *see also Hajciar v. Crawford & Co.*, 369 N.W.2d 860, 862–63 (Mich. Ct. App. 1985).

Adelson did not make any specific allegations of extreme and outrageous conduct in the complaint. And if we were to consider the more specific allegations she sets forth in her briefing to this Court, her claim would fail. *Compare Chungag*, 489 F. App'x at 825 (finding actions were not "sufficiently outrageous" when plaintiff alleged that Wells Fargo "intentionally reported false information on their credit," "put daily notes on the house," "[took] pictures of the house," and "continue[d] to send [its] agents to the house . . . ." (cleaned up)), *with* (Pet. Br. at 66 (alleging Defendants "fabricated false records" and "instructed its home inspectors to drive by her home every week and take pictures")).) And HSBC was within its rights to pursue foreclosure on the house. *See Chungag*, 489 F. App'x at 825. So she did not state a claim for IIED.

### D. Conspiracy

Finally, Adelson alleges that Defendants engaged in a conspiracy to defraud her of her property. Conspiracy, by itself, is not a cause of action. *See Cousineau v. Ford Motor Co.*, 363 N.W.2d 721, 730 (Mich. Ct. App. 1985). Adelson must allege that Defendants were conspiring to engage in some behavior that violates another law. *See Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986). As we've explained, Adelson did not adequately allege that Defendants' behavior violated any laws. So her conspiracy claim "must also fail." *Id*.

### IV.

For these reasons, we affirm.