# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1206

_____

| | | |
|---|---|---|
| Nathaniel Richmond, Stephanie Richmond, | * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal From the United States District Court for the Eastern District of Missouri. |
| Nicholas G. Higgins, doing business as Nicholas G. Higgins & Associates, | * * * | |
| Appellee. | * | |

_____

Submitted: January 9, 2006
Filed: February 2, 2006

_____

Before MURPHY, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Nathaniel Richmond and his wife, Stephanie Richmond, brought this action against Nicholas Higgins, d/b/a/ Nicholas G. Higgins & Associates (Higgins), a debt collection agency, wholly owned by Nicholas Higgins. Richmond alleged that Higgins violated the Fair Debt Collection Practices Act (FDCPA) by misstating, in communications with Richmond's attorney, the amount Richmond owed for treatment

he received at Barnes Jewish Hospital (BJH). The district court[1] granted Higgins summary judgment based on its conclusion that the FDCPA's prohibition of false statements in connection with the collection of a debt does not apply to communications with the debtor's attorney.[2] We affirm, but not for the reason stated by the district court.

## BACKGROUND

Nathaniel Richmond was injured in an automobile accident and treated at BJH in June 2001. He retained Attorney John Albright to represent him in his personal injury action against the other driver. In October 2001, Albright sent BJH a letter requesting a copy of Richmond's unpaid bill and medical records. On November 5, 2001, BJH provided the requested materials, which showed an outstanding balance of $6,716.40. In January, February, and April of 2002, BJH contacted Albright regarding the outstanding balance on Richmond's account. Each time Albright informed BJH that Richmond was attempting to settle the personal injury action and asked BJH to call him back in a few weeks, but did not challenge the validity or the amount of the debt.

In October of 2002, BJH forwarded Richmond's still unpaid account to Higgins for collection. On October 9, 2002, Higgins sent a notice of hospital lien letter to Albright referencing Richmond, BJH, and the outstanding debt amount of $6,716.40. (Appellants' App. at 53.) As required by the FDCPA, see 15 U.S.C. § 1692g(a)(4),

---

[1]The Honorable Thomas C. Mummert III, United States Magistrate Judge for the Eastern District of Missouri. Both parties consented to the jurisdiction of the magistrate, with direct appeal to this court. 28 U.S.C. § 636(c)(3).

[2]It is undisputed that Higgins is a "debt collector," Richmond is a "consumer," and the "debt" that Higgins attempted to collect from Richmond fits the statutory definition of "debt" under the FDCPA. See 15 U.S.C. § 1692a(3), (5), (6) (defining terms).

the letter stated that failure to notify Higgins within thirty days of receipt of the letter of any dispute regarding the validity of the debt would result in an assumption that the debt was valid (Appellants' App. at 53). Although it is undisputed that he received it, Albright never responded to the October 9, 2002 letter. On February 13, 2003, Higgins sent a second letter to Albright requesting a status report on Richmond's personal injury claim. (Appellants' App. at 54.) Albright responded to the February 13 letter on April 1, 2003, alleging for the first time that Higgins misstated the debt amount, in violation of the FDCPA. Albright claimed that federal Medicaid law prohibited Higgins from collecting an amount exceeding the amount that Medicaid would pay. (Id. at 55.) Prior to Albright's April 1, 2003 letter, Higgins had no knowledge that the debt amount was disputed or that a medical care provider, who did not bill Medicaid, might be restricted from collecting more than the Medicaid amount from a Medicaid-eligible patient. (Id. at 51.) On April 9, 2003, Albright sent Higgins another letter stating that he could not "find any way to enforce 42 USCA 1396a(a)(25)(C)&(D)[3] against medical providers other than through the [FDCPA]." (Id. at 17.)

Richmond's personal injury lawsuit settled on August 9, 2003. On September 30, 2003, Higgins wrote to Albright requesting that they discuss payment arrangements, otherwise BJH would reduce its claim to judgment. On October 6, 2003, Richmond sued Higgins in federal district court alleging that Higgins violated the FDCPA by misstating the debt amount in its communications with Albright. Richmond alleged that he was eligible for Medicaid, and thus BJH and Higgins were prohibited from attempting to collect an amount exceeding the amount that Medicaid would pay. Higgins moved for summary judgment alleging that: (1) it could rely on

---

[3]Richmond's allegation that the Medicaid amount is the maximum amount a healthcare provider can collect from a Medicaid-eligible patient, where the healthcare provider elects to collect from the patient rather than Medicaid, has not yet been accepted by our court. For purposes of this appeal we need not determine whether Richmond's interpretation is correct.

BJH's representations regarding the debt amount; (2) the focus of the FDCPA is on the conduct of the debt collector, not the amount of the debt; and (3) letters to the debtor's attorney are not actionable under the FDCPA. The district court granted summary judgment to Higgins based on its conclusion that communications with the debtor's attorney are not actionable under the FDCPA, and did not address Higgins's remaining bases for summary judgment. Richmond subsequently filed this appeal.

## ANALYSIS

Richmond argues that the district court's finding, that the communications with his attorney are not actionable under the FDCPA, contradicts the plain language of 15 U.S.C. § 1692e. Higgins asserts that the district court correctly interpreted the FDCPA, and even if it did not, Higgins is nonetheless entitled to summary judgment on alternative grounds. We review the district court's grant of summary judgment de novo, viewing the evidence "in a light most favorable to the nonmoving party," Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir. 2002), and affirming if "there is no genuine issue as to any material fact and . . . the moving party is entitled to summary judgment as a matter of law," Fed. R. Civ. P. 56(c). We review the district court's interpretation of a statute de novo. Dowd v. United Steelworkers, Local No. 286, 253 F.3d 1093, 1099 (8th Cir. 2001). Although the district court did not address Higgins's alternative grounds for summary judgment, this court may affirm on any basis supported by the record. Brown v. St. Louis Police Dep't, 691 F.2d 393, 396 (8th Cir. 1982).

The district court granted summary judgment because the communications in question were directed to the debtor's attorney rather than the debtor. Whether § 1692e regulates communications directed to the consumer's attorney is a matter of

first impression for this court.[4] According to § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." (Emphasis added). This includes the misrepresentation of the debt amount. § 1692e(2)(A). "If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary." Dowd, 253 F.3d at 1099 (further citation omitted). Several sections of the FDCPA restrict the scope of its application by including the word "consumer" in the text. See, e.g., 15 U.S.C. §§ 1692g, 1692f(7), (8). But at least one section includes specific language to illustrate that it applies to "any person." See § 1692d. Thus, at least in other sections, the FDCPA specifies the actors to which the section applies. Section 1692e contains no indication of to whom it applies, but rather states to what it applies ("any" representation or means). Because we affirm on an alternative basis, we find it unnecessary to decide whether the FDCPA would apply to communications with a debtor's attorney at this time.

---

[4]Although no circuit court has decided this issue, several district courts have held that the FDCPA does not apply to communications with the debtor's attorney, and dicta from the Second Circuit has reached the same conclusion. See Kropelnicki v. Siegel, 290 F.3d 118, 127 (2nd Cir. 2002) (stating in dicta that communications with the debtor's attorney are not actionable under the FDCPA); Diesi v. Shapiro, 330 F. Supp.2d 1002, 1004 (C.D. Ill. 2004) (holding that letters written to plaintiffs' attorney were not actionable under the FDCPA, citing Kropelnicki.); Zaborac v. Phillips & Cohen Assocs., Ltd., 330 F. Supp.2d 962, 967 n.5 (N.D. Ill. 2004) (citing Kropelnicki, in finding that § 1692g does not prohibit debt collection communications targeted at the debtor's attorney); Tromba v. M.R.S. Assocs., Inc., 323 F. Supp.2d 424, 427-28 (E.D.N.Y. 2004) (citing Kropelnicki in finding that a fax addressed to the debtor's attorney was not actionable under the FDCPA); Phillips v. N. Am. Capital Corp., 1999 WL 299872 (N.D. Ill. Apr. 30, 1999) (holding that debtor-plaintiff did not have standing to bring FDCPA § 1692g claim based on communications sent to his attorney) (unpublished); Ignatowski v. GC Servs., 3 F. Supp.2d 187, 190-91 (D. Conn. 1998) (dismissing FDCPA claim based on the failure to include statutorily required disclosures under § 1692e(11), because the attorney in that case could easily discern that defendant was attempting to collect a debt).

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors," § 1692(a), and debt collectors are liable for failure to comply with "any provision" of the Act. §1692k(a). The FDCPA requires debt collectors to notify debtors within five days of the initial communication with the debtor of the debtor's right to dispute the debt. § 1692g(a)(3). The debt collector must also inform the debtor of its right to assume that the debt is valid if the debtor fails to dispute the debt within thirty days of receipt of the notice. Id. If the debtor disputes the debt within the thirty-day period, the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . ." § 1692g(b)[5]. Failure to dispute the debt within the thirty-day period is not an admission of liability. § 1692g(c).

Richmond filed this FDCPA action to dispute a debt. Richmond's attorney, Albright, was aware that the debt amount was $6,716.40 in early November 2001, communicated directly with BJH in January, February, and April of 2002, and did not dispute the debt during any of those conversations. The debt was not turned over to Higgins until October of 2002. On October 9, 2002, Higgins sent Albright a letter stating that it was attempting to collect an outstanding debt of $6,716.40, and requested notification of any dispute regarding the debt within thirty days. Albright did not dispute the debt amount within thirty days of receipt of the letter. In fact, Higgins did not receive notice that the debt was disputed until almost six months later, on April 1, 2003. Accordingly, Higgins was permitted under the FDCPA to assume that the debt was valid. See § 1692g(a)(3). In the year and five months between the date that Albright was first informed of the debt amount, in early November of 2001, until he first disputed the debt amount on April 1, 2003, the debt amount never changed.

_____

[5]The FDCPA does not speak to whether the protections provided under § 1692g(b) attach if the debtor disputes the debt after the expiration of the thirty-day period.

Richmond has never alleged that he was billed for services that were not provided or that he was overcharged for the services he received. The conduct that Richmond alleges violated the FDCPA was Higgins's attempt to collect a previously undisputed debt amount. Richmond was aware of the debt amount almost a year before the debt was sent to Higgins for collection. There is nothing in the record to show that the basis for this dispute did not exist prior to April 1, 2003. Having carefully reviewed the record and the text and legislative history of the FDCPA, we can ascertain no basis for a claim in these circumstances. To hold otherwise would be to sanction consumer conduct that the FDCPA clearly did not contemplate. We hold that there was no violation of the FDCPA,[6] and therefore we affirm the district court's grant of summary judgment.

## CONCLUSION

For the above-stated reasons, we affirm the district court.

_____

[6]We do not hold that Richmond cannot dispute the debt amount.

-7-