# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1553

_____

James Dunham, on behalf of himself          *
and all others similarly situated,          *
                                            *
            Appellant,                       *
                                            *   Appeal from the United States
        v.                                   *   District Court for the
                                            *   Eastern District of Arkansas.
Portfolio Recovery Associates, LLC,          *
                                            *
            Appellee.                        *

_____

Submitted: September 20, 2011
Filed: December 15, 2011

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

James Dunham, on behalf of himself and others similarly situated, sued Portfolio Recovery Associates, LLC (PRA), alleging claims under the Federal Debt Collection Practices Act (FDCPA). PRA filed a motion for summary judgment, arguing that Dunham lacked standing because he is not a "consumer" under the FDCPA. Agreeing, the district court[1] granted PRA's motion for summary judgment.

_____

[1]The Honorable J. Leon Holmes, Chief Judge, United States District Court for the Eastern District of Arkansas.

Dunham challenges this ruling on appeal. For the following reasons, we affirm the judgment on different grounds.

## I. *Background*[2]

PRA is a debt collection agency that purchases debt portfolios—pools of commercial and non-commercial payment obligations that the original lenders have been unable to collect. Dunham practices law in Russellville, Arkansas. In January 2008, PRA purchased a debt portfolio, which included a payment obligation that a "James Dunham" owed, from Credigy Receivables, Inc. ("Credigy Receivables").

On March 4, 2008, PRA sent a form notification letter requesting payment to Dunham. The letter advised, among other things, that "[u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt . . . this office will assume this debt is valid." Doubting that he owed this debt, and believing the letter to be a mistake, Dunham sent PRA a letter disputing this liability, and demanding validation of the payment obligation. On March 18, 2008, PRA transmitted a form validation letter, or "D4 letter," to Dunham acknowledging its receipt of his dispute letter. This D4 letter provided Dunham additional information related to the payment obligation, including the debtor's name, address, and the last four digits of the debtor's social security number; the date of the payment obligation; the date PRA purchased the payment obligation; and the current outstanding balance on the payment obligation. Along with the D4 letter, PRA attached an affidavit of one of its employees averring that according to PRA's records, Dunham incurred a debt from Credigy Receivables that now totaled $2,906.55. The affidavit further stated that Credigy Receivables sold, assigned, and transferred that debt to PRA on January 31, 2008. In furnishing this information to Dunham, PRA

---

[2]We review the facts in the light most favorable to Dunham. *Bonn v. City of Omaha*, 623 F.3d 587, 589 (8th Cir. 2010) ("Because we are reviewing the district court's grant of summary judgment against [the plaintiff], we recite the facts in the light most favorable to [the plaintiff].").

examined only its own files and did not attempt to contact the original creditor. Moreover, as the district court observed, "[t]he affidavit did not purport to give the original amount of the debt, the date upon which the debt was incurred, or the goods or services for which it was incurred."

Upon receiving PRA's D4 letter, Dunham concedes that he immediately recognized that the last four digits of the debtor's social security number did not match his own. At that point, he believed that PRA had erroneously contacted him about the payment obligation. Dunham never responded to the letter but instead, almost a year later, commenced the instant putative class action in district court. Dunham alleged that PRA's D4 letter violated 15 U.S.C. § 1692g, the FDCPA's debt-validation provision, because it failed to include information that PRA verified with the original creditor.

At Dunham's deposition, PRA discovered for the first time that Dunham's social security number does not match that of the actual debtor. PRA now concedes that Dunham does not owe the payment obligation. After discovery, Dunham and PRA filed cross-motions for summary judgment. Dunham also moved for discovery sanctions on the ground that PRA belatedly produced a "seller survey," which, Dunham contends, indicates that the payment obligation at issue was a consumer debt. In addition, Dunham requested class certification.

On February 11, 2011, the district court granted PRA's motion for summary judgment. The district court concluded that § 1692g, confers a cause of action only to an aggrieved "consumer" and that Dunham is not a "consumer" under the FDCPA. Specifically, the district court concluded that because PRA never alleged that Dunham owed a payment obligation, but rather alleged that a different "James Dunham" owed the payment obligation, this "James Dunham" is not a "consumer" under the FDCPA's plain language—"any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). According to the district court,

Dunham was not obligated to pay what the other "James Dunham" owed and PRA alleged the other "James Dunham" owed the money. In other words, under the district court's reading of the statute, the FDCPA's debt-validation provisions do not provide a remedy to non-debtors mistakenly targeted by debt-collection efforts.

Based on its conclusion that Dunham is not a "consumer" and thus lacked standing to sue under the FDCPA, the district court denied Dunham's discovery-sanctions motion as moot. Finally, the district court denied Dunham's motion for class certification on the ground that Dunham "'is not a proper representative of the class where he himself lacks standing to pursue the claim.'" (quoting *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196–97 (8th Cir. 1998)). Dunham appeals.

## II. *Discussion*

"'We review de novo the district court's grant of summary judgment, as well as the district court's interpretation of . . . a federal statute.'" *Owner-Operator Indep. Drivers Ass'n v. Supervalu Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (quoting *Jessep v. Jacobson Transp. Co.*, 350 F.3d 739, 741–42 (8th Cir. 2003)).

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' . . . and debt collectors are liable for failure to comply with 'any provision' of the Act." *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir. 2006) (quoting 15 U.S.C. §§ 1692(e), 1692k(a)) (internal citations omitted). Section 1692g "requires debt collectors to notify debtors within five days of the initial communication with the debtor of the debtor's right to dispute the debt." *Id.* at 828–29 (citing 15 U.S.C. § 1692g(a)(3)). "If the debtor disputes the debt" within 30 days of receiving the notice, then "the debt collector must 'cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . .'" *Id.* at 829 (alteration in original) (quoting 15 U.S.C. § 1692g(b)).

"Several sections of the FDCPA," including § 1692g, "restrict the scope of [the FDCPA's] application by including the word 'consumer' in the text." *Id.* at 828 (citing, *inter alia*, 15 U.S.C. § 1692g). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). In contrast, the Act uses the phrase "any person" rather than "consumer" in other parts of the Act. *See* 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."). "Thus, at least in [some] sections, the FDCPA specifies the actors to which the section applies." *Richmond*, 435 F.3d at 828. Therefore, to withstand summary judgment on a claim of inadequate debt validation under § 1692g(b) of the FDCPA, Dunham must create genuine issues of material fact as to the following elements: (1) that he is a consumer; (2) that PRA is a debt collector who contacted him in an attempt to collect a debt[3]; (3) that he duly notified PRA in writing that he disputed the debt; and (4) that PRA resumed or failed to cease debt-collection efforts without first (a) obtaining verification of the debt or a copy of a judgment and (b) mailing a copy of the verification or judgment to the consumer.

In its brief, PRA concedes that it is a debt collector under the FDCPA and that Dunham timely notified it in writing that he disputed the debt. But PRA disputes that Dunham has produced sufficient evidence to create fact issues regarding (1) whether he is a "consumer" as defined by the FDCPA; (2) whether the payment obligation that PRA sought to recoup was actually a "debt" as defined by the FDCPA (a determination that also turns on whether Dunham is a "consumer"); and (3) whether the PRA properly "obtained verification of the debt."

---

[3]"The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

A. *Whether Dunham Is a "Consumer" Under the FDCPA*

On appeal, Dunham argues that the district court erred in finding that he was not a "consumer" under the FDCPA because Dunham was not the intended recipient of PRA's communications. Whether § 1692a(3)'s definition of "consumer" includes Dunham is a question of statutory interpretation. We review such questions de novo, "which requires us to examine the text of the statute as a whole by considering its context, object, and policy." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc). "Ultimately, '[o]ur objective in interpreting a federal statute is to give effect to the intent of Congress.'" *Id.* (quoting *United States v. Vig*, 167 F.3d 443, 447 (8th Cir. 1999)).

We first look at the ordinary meaning of the FDCPA's plain language to determine the meaning of "consumer." *See United States v. I.L.*, 614 F.3d 817, 820 (8th Cir. 2010). Section 1692a(3) provides that "[t]he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). As both parties correctly note, resolution of whether the plain language of § 1692a(3)'s "consumer" definition encompasses Dunham, someone mistakenly contacted by a debt collector, turns on the proper reading of the phrase "allegedly obligated to pay."

PRA argues that because it erroneously contacted the wrong "James Dunham," it did not "allege" that Dunham was "obligated to pay any debt." In other words, PRA only alleged that the "James Dunham" who actually owes the payment obligation owed a debt, not the "James Dunham" who filed this lawsuit. Thus, PRA contends, Congress's decision to limit § 1692g's protections only to "consumers" reflects a congressional desire to withhold a cause of action for inadequate debt-validation from an individual like Dunham who a debt collector mistakenly contacts. Under PRA's interpretation of the Act, a person who has been abused by a debt collector's harassing tactics, which the FDCPA generally prohibits, could not invoke the protection of the FDCPA if the debt collector contacted the individual by mistake. This interpretation

would read the phrase "allegedly obligated" to only apply to those who actually owe or owed the specific debt at issue, despite whether a debt collector asserted a person owes the specific debt.

PRA's position too narrowly constricts the plain meaning of "alleged." Webster's Dictionary defines "allege" as meaning, among other things, "to state or declare as if under oath positively and assuredly but without offering complete proof" and "to assert, affirm, state, without proof or before proving (alleged that the suspect is a kidnapper[)]." Webster's Third New International Dictionary 55 (2002). "Alleged" also means, *inter alia*, "questionably true or of the kind specified: SUPPOSED, SO-CALLED." *Id.* Finally, Black's Law Dictionary defines "alleged" as "1. Asserted to be true as described <alleged offenses>. 2. Accused but not yet tried <alleged murderer>." Black's Law Dictionary 74 (7th ed. 1999).

We find that PRA alleged that Dunham owed a payment obligation. PRA concedes, as it must, that it contacted Dunham with letters demanding that a "James Dunham" pay the payment obligation. If Dunham paid the payment obligation, PRA would have likely found that "James Dunham" satisfied his payment obligation. Therefore, PRA alleged, albeit mistakenly, that Dunham owed the payment obligation. Simply put, a mistaken allegation is an allegation nonetheless. Thus, we read § 1692a(3) to include individuals who are mistakenly dunned by debt collectors.

The Federal Trade Commission (FTC) Commentary supports this conclusion. In its Staff Commentary, the FTC states that "[a] debt collector must verify a disputed debt even if he has included proof of the debt with the first communication, *because the section is intended to assist the consumer when a debt collector inadvertently contacts the wrong consumer at the start of his collection efforts*." FTC Staff Commentary, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988) (emphasis added). Although the FTC's interpretation is not binding, we have found this same Staff Commentary persuasive in the past when construing other sections of the FDCPA.

*See, e.g.*, *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) ("This interpretation is confirmed by the relevant part of the Federal Trade Commission's December 1988 Staff Commentary on the Fair Debt Collection Practices Act . . . .").

Thus, the district court erred in concluding that the plain language of § 1692a(3)'s "consumer" definition does not apply to Dunham because a debt collector mistakenly alleged that he owed a debt.

B. *Whether PRA Verified Mr. Dunham's Payment Obligation*

While we reject the district court's interpretation of § 1692a(3), we nonetheless affirm its judgment because we find that PRA sufficiently verified PRA's debt. Section 1692g(b) provides, that upon a debtor's written notice that he or she disputes a debt, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." "Consistent with the legislative history, verification is only intended to 'eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collet debts which the consumer has already paid.'" *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (quoting S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699)) (alterations in original).

Here, PRA's D4 letter sufficiently notified Dunham that he was not the "James Dunham" who owed PRA a payment obligation. In response to Dunham's dispute letter, PRA sent Dunham a D4 letter containing the debtor's name, address, and the last four digits of the debtor's social security number; the date of the payment obligation; the date PRA purchased the payment obligation; and the current outstanding balance on the payment obligation. Additionally, PRA attached to the D4 letter the affidavit of one of its employees, averring that, according to PRA's records, Dunham incurred a debt that now totaled $2,906.55 to Credigy Receivables, and, on January 31, 2008, Credigy Receivables sold, assigned, and transferred that debt to

PRA. Upon receiving this letter, Dunham glanced at the last four digits of the debtor's social security number and knew that he did not owe the payment obligation.

Although PRA apprised Dunham that he did not owe this particular payment obligation, Dunham argues that the FDCPA further required PRA to "obtain[] verification," 15 U.S.C. § 1692g(b),–meaning that it must acquire additional information about the debtor from the original creditor and send that additional information to Dunham. We disagree. Under different facts, perhaps a debt collector must do more than what PRA did here, but here we find PRA's verification to be sufficient. PRA sent Dunham enough information to put him on notice that PRA dunned the wrong person. After receiving the D4 letter, Dunham did not fear that he owed any debt to PRA and did not contact PRA except by filing this lawsuit over a year later.

Several of our sister circuits support this conclusion. *See, e.g.*, *Clark v. Capital Credit & Collection Servs. Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) ("We decline to impose such a high threshold. Rather, we adopt as a baseline the more reasonable standard articulated by the Fourth Circuit in *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)."); *Chaudhry*, at 406 ("Contrary to Appellants' contention, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991) (holding that a debt collector that did not contact the original creditor satisfied the FDCPA's verification requirement by sending computer printouts that provided the alleged debtor with "the amounts of his debts, the services provided, and the dates on which the debts were incurred.").

A contrary conclusion under these facts would require PRA to send Dunham the true debtor's personal payment information. This information could possibly include such confidential information as the debtor's full social security number,

credit score, or credit history. The FDCPA does not require such a result where the alleged debtor, as here, could sufficiently dispute the payment obligation by looking at the last four digits of the true debtor's social security number. Under these facts, PRA sufficiently verified the payment obligation to inform Dunham that he did not have to pay PRA.

Although we find that the district court erred in interpreting the FDCPA's consumer requirement, we nonetheless affirm the judgement. Whether Dunham is a "consumer" is not determinative because we find that PRA sufficiently verified the payment obligation that Dunham allegedly owed.[4]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[4]In reaching the conclusion that PRA sufficiently verified the payment obligation, we do not reach the question of whether the payment obligation was a "debt" as defined in the FDCPA.