Reinaldo GARCIA, Plaintiff,

v.

Winthrop FRY, Defendant.

Civil No. 3:15cv597(AWT)

United States District Court,
D. Connecticut.

Signed May 12, 2016

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, for Plaintiff.

Joseph Bree Burns, Thomas Plotkin, Rome McGuigan, P.C., Hartford, CT, for Defendant.

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

Alvin W. Thompson, United States District Judge

The plaintiff, Reinaldo Garcia ("Garcia"), brings a two-count complaint alleging vio-

lations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Connecticut Unfair Practices Act ("CUTPA"), Conn. Gen. Stat. § 42–110a et seq.

The defendant, Winthrop Fry ("Fry"), has moved for judgment on the pleadings.[1] For the reasons set forth below, the defendant's motion is being granted.

## I. FACTUAL ALLEGATIONS

For purposes of this motion, the court takes the following factual allegations set forth in the complaint as true.

Defendant Fry is a Connecticut State Marshal whose business is to serve process for a fee. Plaintiff Garcia is a consumer within the meaning of the FDCPA who at the time of the relevant events lived in Bridgeport and worked at Sikorsky.

On December 10, 2014, the Connecticut Superior Court issued a wage execution in the amount of $5,455.98 upon a judgment arising from Garcia's use of a credit card for personal, family, and household uses. The execution was forwarded to Fry shortly thereafter.

On December 30, 2014, Fry transmitted the execution by fax to Sikorsky's payroll processor, which is located out of state. Sikorsky notified Garcia on January 11, 2015 that his wages were being garnished in a sum total of $6,274.38 (which included a marshal fee of $828.92) and that the amount taken out of his wages would be approximately $491.14 per week. Garcia "was particularly upset and took the next day off from work to try to deal with this financial blow, which included the employer's over-statement of the amount which could legally be taken from his pay." (Compl., Doc. No. 1, at ¶ 14.)

Fry is aware that he has no jurisdiction to serve process outside of his jurisdiction of Fairfield County, Connecticut, and he is aware that service by fax is illegal. Garcia alleges that "Fry routinely faxes wage executions to out of state payroll services or employers, aware that the payroll services, as here, are then misled into unlawfully withholding wages despite insufficient and illegal service that does not comply with Connecticut law." (Compl. at ¶ 18.)

The judgment creditor withdrew the wage execution upon learning that it had been "served" by fax, which is not authorized under Connecticut General Statutes § 52–361a(d). Fry's office sent a release of lien to the payroll service on January 13, 2015, after being asked to do so by the judgment creditor's counsel. Thus, no actual garnishment ever occurred as a consequence of the faxed wage execution, because the release of the lien stopped the process before any wages were taken.

## II. LEGAL STANDARD

The legal standard for a motion for judgment on the pleadings under Fed R. Civ. P. 12(c) is identical to that for a 12(b)(6) motion. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir.2006). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twom-

---

1. After Fry filed the motion for judgment on the pleadings, Garcia moved for summary judgment as to the FDCPA claims only (see Doc. No. 25).

bly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955 (internal quotation marks omitted)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted).

However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Stores Co., 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F.Supp. 784, 786 (D.Conn.1990) (citing Scheuer, 416 U.S. at 232, 94 S.Ct. 1683).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir.1993).

"[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559, No. 15–3023–CV, 2016 WL 1696597, at *3 (2d Cir. Apr. 28, 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir.2002)).

## III. DISCUSSION

### A. Count One: FDCPA

"At its heart, the [FDCPA] is a consumer protection statute, and violators are subject to strict liability. Bentley v. Great Lakes Collection Bureau, Inc., 6 F.3d 60, 63 (2d Cir.1993). Thus, a single violation of section 1692e is sufficient to establish civil liability under the FDCPA. See 15 U.S.C. § 1692k (establishing civil liability for 'any debt collector who fails to comply with any provision of this subchapter')." Fields v. Western Mass. Credit Corp., 479 F.Supp.2d 287, 290 (D.Conn.2007). See also Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir.2006) ("The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' § 1692(a), and debt collectors are liable for failure to comply with 'any provision' of the Act. § 1692k(a).") The parties agree that the plaintiff was a consumer. Thus, to establish that Fry is liable under the FDCPA, the plaintiff must show that Fry acted as a debt collector and that he violated a provision of the FDCPA during the collection of debt.

"The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status." Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 60 (2d Cir.2004). The FDCPA has a number of exclusions

from the statutory definition of "debt collector." In relevant part, the act provides that the term does not include:

> (C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;
>
> (D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt . . . .

15 U.S.C. § 1692(a)(6).

### 1. State Officer Exemption

 The parties agree that as a Connecticut State Marshal, Fry is a state officer.[2] "The term debt collector is not intended to include the following: . . . Government officials, such as marshals and sheriffs, while in the conduct of their official duties." Heredia v. Green, 667 F.2d 392, 399 (3d Cir.1981) (quoting S. Rep. No. 95-382 (1977)). In Heredia, the Third Circuit held that the defendant was shielded from liability under the FDCPA by the state officer exemption, because he was a Landlord and Tenant Officer, a court-appointed position for serving notices to quit upon tenants in arrears.

In Heredia, the court considered the following factors in determining whether the state officer exemption applied: (1) the defendant was appointed to his position by the court and could be removed from it only by the court, (2) the defendant "perform[ed] his duties pursuant to orders and instructions" from the court, (3) the President Judge of the court had "specifically authorized his Landlord and Tenant Offi-

cers to serve the Notice in question, and the defendant officer "ha[d] little discretion in this regard," and (4) "not only the form of the notice in question but also the entire procedure involved in this case was designed and approved by" the court. Id. at 395–96. See also, e.g., Weiss v. Weinberger, No. 2:04–CV–463 PS, 2005 WL 1432190, at *4 (N.D.Ind. June 9, 2005) ("As an officer of the Court with a duty to collect debts, the [defendant] is excluded as a debt collector under the FDCPA because his attempts to collect debts are in the performance of his official duties.").

Likewise, Fry was attempting to collect debts in the performance of his official duties as a state marshal. Even if, as Garcia alleges, Fry's transmission of fax to an out-of-state entity was not in accordance with Connecticut law, his actions were still performed in the course of his duties as a marshal, a fact that the plaintiff does not dispute. Thus, Fry is exempt from the FDCPA under the state officer exemption.

### 2. Process Server Exemption

 Fry also contends that he is exempt from the FDCPA under the process server exemption. "[P]rocess servers are expressly exempted from the FDCPA's provisions while they are engaged in the process of 'serving or attempting to serve legal process.' 15 U.S.C. § 1692a(6)(D)." Carubia v. Cohen & Slamowitz LLP, No. 1:14–CV–501, 2015 WL 348205, at *6 (N.D.N.Y. Jan. 23, 2015). "[P]rocess servers whose involvement is merely 'limited to serving the [debt collection] communication on the consumer—in effect, to being messengers'—are exempt." Sykes v. Mel Harris & Assocs., LLC, 757 F.Supp.2d 413, 423 (S.D.N.Y.2010) (quoting Romea v.

---

**2.** In his opposition to the motion for judgment on the pleadings, the plaintiff contended that Fry was not a "state officer," but in Garcia's later-filed reply memorandum in further support of his summary judgment mo-

tion, Garcia states that "[i]t is beyond dispute that a marshal is an officer of the State." (Pl.'s Reply in Supp. Mot. for Summ. J., Doc. No. 30, at 2.)

Heiberger & Assocs., 163 F.3d 111, 117 (2d Cir.1998)). "But a process server who goes beyond being merely being a messenger and engages in prohibited abusive or harassing activities to force an individual to repay a debt cannot claim the exemption's protections." Id. (internal citation and quotation marks omitted).

■ Fry contends that "[t]he alleged misconduct—faxing where he should have mailed, stepping outside of jurisdiction, which all purportedly constitute failures to observe the requirements of proper service, do not constitute 'abusive or harassing activities' ... that would thrust Marshal Fry outside of his role as a messenger and into actionable misconduct." (Def.'s Mem., Doc. No. 24-1, at 17.) The court agrees. Garcia contends that the fax created a false impression that it was a garnishment and was legal process. However, Garcia has failed to allege facts showing that any of Fry's actions were abusive or harassing such that they would cause his conduct to be outside the scope of the process server exemption.

Garcia further contends that Fry is not covered by the process server exemption because he was not actually serving process. The plaintiff argues that "[t]he complaint purposely did not allege that Marshal Fry was serving a wage execution, but merely that he 'transmitted' the execution." (Pl.'s Opp., Doc. No. 28, at 4.) However, the complaint itself alleges that "[t]he Judgment Creditor withdrew the wage execution upon learning it had been illegally 'served' by fax." (Compl. at ¶ 15; see also id. at ¶ 16 ("Marshal Fry is aware that he has no jurisdiction to serve process outside of his jurisdiction ....."), ¶ 17 ("Marshal Fry is aware that service by fax is illegal.") (emphases added).

## B. Count Two: CUTPA

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b" may bring a civil action based on CUTPA. Conn. Gen. Stat. § 42–110g. "[A] party claiming an exemption from CUTPA has the burden of proof." Normand Josef Enters., Inc. v. Connecticut Nat. Bank, 230 Conn. 486, 509, 646 A.2d 1289 (1994) (citing Conn. Gen. Stat. § 42–110c(b)).

■ To determine whether a practice is unfair or deceptive in violation of CUTPA, Connecticut courts consider the following factors:

(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . .

Ventres v. Goodspeed Airport, LLC, 275 Conn. 105, 155, 881 A.2d 937 (2005) (citation omitted).

### 1. Ascertainable Loss

■ "[T]he ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." Parker v. Shaker Real Estate, Inc., 47 Conn.App. 489, 496, 705 A.2d 210 (1998) (internal citation and quotation marks omitted). " 'An ascertain-

able loss is a deprivation, detriment [or] injury that is capable of being discovered, observed or established.'" Id. at 496, 705 A.2d 210 (citation omitted). "A plaintiff need not 'prove a specific amount of actual damages in order to make out a prima facie case [under CUTPA].'" Serv. Rd. Corp. v. Quinn, 241 Conn. 630, 639, 698 A.2d 258 (1997).

█ Fry argues that Garcia suffered no pecuniary loss as a result of the wage execution. The complaint includes a demand for actual damages, and Garcia contends that he suffered an ascertainable loss of "a day's wages, at the least," because "[b]ut for the abuse of process, no day's wages would have been lost because there would have been nothing [for Garcia] to investigate." (Pl.'s Opp. at 8.) Fry contends that "[i]t is not alleged that Garcia's responses were conditioned by his knowledge of alleged unlawful service—on the face of the Complaint, it was the fact of the garnishment itself that upset him." (Def.'s Mem. at 21.) Thus, "[t]he claimed sources of his actual damages—emotional upset, a day off from work and travel—would likely ha[ve] still occurred, proper service or improper service." (Id.) However, accepting the plaintiff's factual allegations as true, as the court must do at this stage of the case, the court cannot conclude that Garcia has not suffered any ascertainable loss.

### 2. Transaction or Action Otherwise Permitted by Law

█ Fry argues that he is exempt from CUTPA under Connecticut General Statutes § 42–110c(a)(1) because his action "was a transaction or action otherwise permitted under law as administered by statutory authority of the state." CUTPA is not applicable to transactions which are: "(1) explicitly subject to a different and specifically applicable statutory remedy; and (2) . . . not among the types of transactions to which the Federal Trade Commission Act (FTC Act) has been applied." Connelly v. Hous. Auth. of City of New Haven, 213 Conn. 354, 361–62, 567 A.2d 1212 (1990).

The exemption to CUTPA liability under Conn. Gen. Stat. § 42–110c "is broader than the [state action immunity] exception in the state antitrust act." Automated Salvage Transport, Inc. v. Wheelabrator Envtl. Sys., Inc., 18 Conn.L.Rptr. 6, 1996 WL 601997, at *4 (Conn.Super.Ct. Oct. 8, 1996). The CUTPA exemption "does not require that the activity at issue be 'specifically directed' or 'required' but only [requires] that the actions be permitted and be subject to regulation by a regulatory board or officer." Id. at *4.

Wheelabrator Envtl. Sys., Inc. v. Galante, No. 3:97CV01040(AVC), 2000 WL 863029, at *9 (D.Conn. Mar. 31, 2000).

█ Garcia contends that Fry cannot prove he is within this exemption because "[h]e cannot prove that his actions are permitted by any regulatory board." (Pl.'s Opp. at 7.) However, courts considering CUTPA claims focus on the broader pattern of activity by the defendant, not the specific allegations of misconduct. In Connelly, for example, the court held that "the 'transactions or actions otherwise permitted under law' are the continued leasing or renting of subsidized apartments to low income tenants," not the defendant's failure to "provid[e] adequate heat and hot water to its tenants due to faulty boilers, plumbing, pumps and heating systems in the apartment buildings." 213 Conn. at 361, 357, 567 A.2d 1212. Here, the manner in which Fry attempted to serve the wage execution is not salient to the question of whether his wage execution authority is statutorily authorized and regulated.

As the defendant notes, state marshals are "creatures of statute, vested with nearly exclusive authority to serve process,

including wage executions," and are "regulated by the State Marshal Commission." (Def.'s Mem. at 19.) The regulatory regime governing state marshal conduct, investigations of misconduct, and disciplinary actions, exists independently of CUTPA. (See Conn. Gen. Stat. § 6–38 et seq.). Thus, because the attempted service falls within a broader pattern of activity, i.e., service of process, otherwise permitted under state law as administered by statutory authority of the state, Fry's action is exempt from CUTPA.

## IV. CONCLUSION

For the reasons set forth above, the defendant's Motion for Judgment on the Pleadings (Doc. No. 24) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.