# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3167
_____

Stephanie Reygadas

*Plaintiff - Appellee*

v.

DNF Associates, LLC

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Ft. Smith
_____

Submitted: June 18, 2020
Filed: December 14, 2020
_____

Before LOKEN and GRASZ, Circuit Judges, and CLARK[*], District Judge.
_____

LOKEN, Circuit Judge.

Appellant DNF Associates, LLC ("DNF"), purchased a debt that Stephanie Reygadas owed to an online retailer, hired a law firm, and brought a collection action in state court. Reygadas retained an attorney and moved to dismiss the complaint for

_____

[*]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri, sitting by designation.

insufficient process and service of process. When DNF did not respond, the court dismissed its claim. DNF then hired a licensed debt collection agency, Radius Global Solutions, LLC ("RGS"), to collect Reygadas's debt. DNF provided RGS information about the outstanding debt but did not tell RGS that Reygadas had retained an attorney in the state court action. RGS sent Reygadas a letter offering to settle. She then commenced this lawsuit, alleging, *inter alia*, that DNF violated the federal Fair Debt Collection Practices Act ("FDCPA"), and the Arkansas Fair Debt Collection Practices Act ("AFDCPA"), when RGS contacted her directly without the consent of her attorney. See 15 U.S.C. § 1692c(a)(2); Ark. Code Ann. § 17-24-504(a)(2).

DNF moved for summary judgment, arguing it was not a "debt collector" under either statute. The district court denied DNF's motion and, *sua sponte*, granted partial summary judgment in favor of Reygadas on the question of DNF's liability. The court concluded that (i) DNF qualifies as a "debt collector" because its principal purpose is "the collection of any debts," (ii) RGS was acting as DNF's agent, and (iii) DNF is liable for the violation arising from RGS's direct contact with Reygadas because DNF had actual knowledge Reygadas was represented by counsel. Reygadas v. DNF Assocs. LLC, No. 2:18-CV-02184, 2019 WL 2146603, at *1-3 (W.D. Ark. May 16, 2019). The district court declined to certify an interlocutory appeal. See 28 U.S.C. § 1292(b). Reygadas then accepted a $4,000 offer of judgment, and final judgment was entered in her favor. DNF now appeals. Reviewing the grant of summary judgment *de novo*, we conclude that, while DNF qualifies as a "debt collector" under both statutes, Reygadas did not present sufficient evidence to establish that RGS's actions may be imputed to DNF as a matter of law. Dunham v. Portfolio Recovery Assocs., LLC, 663 F.3d 997, 1000 (8th Cir. 2011) (standard of review).[1] Accordingly, we vacate the judgment and remand.

_____

[1]The parties agree that Reygadas's AFDCPA claims depend upon our interpretation of the FDCPA.

# I. The Debt Collector Issue.

Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). In the typical debt collection scenario, a creditor such as a retailer or credit card company originates consumer debt and initially seeks to collect the debt if the consumer does not pay on time. If the debt becomes seriously overdue, the originating creditor contracts with an independent debt collector, who too often engaged in a myriad of abusive collection practices that Congress sought to restrict or prohibit in the FDCPA. See S. Rep. No. 95-382, at 2-4, 7 (1977); H.R. Rep. No. 95-131, at 2-4 (1977). Because Congress's focus was on the practices of independent debt collectors, the statute excludes from the definition of "debt collector" any creditor "collecting his own debts" using his own name, and employees and affiliates "collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A), (B), (F).

Unpaid consumer debt is an asset of the creditor. Like other accounts receivable, consumer debt can be assigned, sold, or transferred in ways such as mortgage foreclosure or discounting to the creditor's bank, in which case the risk of non-collection passes to the transferee. An issue Congress faced in drafting the FDCPA was whether buyers or transferees of consumer debt should be treated as "debt collectors," subject to the full range of FDCPA prohibitions, or as originating creditors, largely exempt from those prohibitions. Congress addressed the issue by defining who is a "debt collector" in the alternative:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). These have come to be known as the "principal purpose" and the "regularly collects" definitions. Schlaf v. Safeguard Prop., LLC, 899 F.3d 459, 464 (7th Cir. 2018).[2]

DNF is a "debt buyer," an independent entity that purchases defaulted consumer debt from originating creditors such as retailers, utilities, and credit card issuers (or from intermediary purchasers) and contracts with third parties to collect it. See Fed. Trade Comm'n, Collecting Consumer Debts: The Challenges of Change 13-14 (2009). Some debt buyers package and resell portfolios of defaulted debt; others seek to collect. Id. at 13. DNF calls itself a "passive" debt buyer because it purchases defaulted consumer debt and contracts with third parties, such as law firms and licensed debt collection agencies, to collect the debt. Advocates routinely assert that Congress did not face the issue whether debt buyers such as DNF are "debt collectors" because "the advent of the market for defaulted debt represents one of the most significant changes to the debt market generally since the [FDCPA]'s passage." Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1724 (2017) (cleaned up). While it is certainly true that the debt market has evolved since 1977, including explosive growth of debt buyers such as DNF, it is not true that the protracted debates in Congress preceding passage of the FDCPA failed to recognize this issue:

> Mr. TAYLOR. Mr. Chairman . . . in the event a retailer discounts paper to a bank . . . and . . . it is the custom for the bank to engage in the collection of that account. Would that be covered under this?
>
> Mr. WYLIE. . . . If the bank turns the bill over to another person to collect the debt for a fee and that person earns his livelihood collecting debts, he would be covered, but the bank would not be.

---

[2]The statute lists additional definitions of debt collector and several exclusions in 15 U.S.C. § 1692a(6)(A)-(F). The AFDCPA largely tracks these definitions. The "principal purpose" and "regularly collects" definitions in the AFDCPA are materially identical to the FDCPA. See Ark. Code Ann. § 17-24-502(5)(A).

.   .   .   .   .

> Mr. CHAPPELL. . . . I am concerned about the [practice in which a] bill that is owed [is taken] from the first owner into a collection agency which then becomes a bona fide owner. How do we address that?
>
> Mr. WYLIE. I would say *if [the buyer] becomes a bona fide owner of a debt and his primary business is "not" debt collecting then he is not covered by the bill.* He is not an independent debt collector.

123 Cong. Rec. 10,245 (1977) (emphasis added). This legislative history is consistent with our interpretation of the statute's plain meaning and refutes the oft-advanced argument that Congress did not consider whether debt buyers can also be debt collectors.

Prior to the Supreme Court's decision in <u>Henson</u>, the great majority of lower courts held that debt buyers such as DNF were "debt collectors" under the FDCPA, rejecting the argument that debt buyers are "creditors" rather than "debt collectors" because they own the debt being collected. Because Congress excluded a collection activity that "concerns a debt which was not in default at the time it was obtained," § 1692a(6)(F)(iii), most courts concluded "that one attempting to collect a debt is a 'debt collector' under the FDCPA if the debt in question was in default when acquired. Conversely . . . § 1692a means that an entity is a creditor if the debt it is attempting to collect was not in default when it was acquired." <u>F.T.C. v. Check Investors, Inc.</u>, 502 F.3d 159, 173 (3d Cir. 2007), <u>cert. denied</u>, 555 U.S. 1011 (2008); <u>see, e.g.</u>, <u>McKinney v. Cadleway Props., Inc.</u>, 548 F.3d 496, 501 (7th Cir. 2008). <u>Contra</u> <u>Davidson v. Cap. One Bank (USA), N.A.</u>, 797 F.3d 1309, 1316 (11th Cir. 2015). We were not presented the issue prior to <u>Henson</u>, no doubt because the debt buyer defendant in <u>Dunham</u> conceded that it was a debt collector under the FDCPA, so the issue on appeal was whether the plaintiff was a "consumer." 663 F.3d at 1001.

In Henson, focusing on the plain language of the FDCPA's "regularly collects" definition, the Supreme Court held that debt buyers who "regularly purchase debts originated by someone else and then seek to collect those debts for their own account" are not debt collectors because they do not regularly seek to collect debts "owed . . . another." 137 S. Ct. at 1721-22, quoting 15 U.S.C. § 1692a(6). The "regularly collects" definition "seems to focus our attention on third party collection agents working for a debt owner -- not on a debt owner seeking to collect debts for itself." Id. at 1721. In reaching this conclusion, the Court expressly rejected the argument that "debt purchasers surely qualify as collectors at least when they regularly purchase and seek to collect *defaulted* debts." Id. at 1724 (emphasis in original). And it put aside the contention that "Congress never had the chance to consider what should be done about" debt buyers because the market has significantly changed; "it is never our job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced." Id. at 1724-25. However, of significance here, the court recognized but expressly declined to consider "another statutory definition of the term 'debt collector' -- one that encompasses those engaged 'in any business the principal purpose of which is the collection of any debts.'" Id. at 1721, quoting § 1692a(6).

We now consider how the "principal purpose" definition applies to debt buyers such as DNF,[3] bearing in mind the Supreme Court's emphasis in Henson (and many other cases) that it is our job "to apply faithfully the law Congress has written," id. at 1725, as well as another principle of statutory construction the Court applied to the

---

[3]Our statement in Schmitt v. FMA All., 398 F.3d 995, 998 (8th Cir. 2005), that the FDCPA "does not regulate creditors' activities at all" reflected the statute's fundamental "distinction between creditors and debt collectors." Randolph v. IMBS, Inc., 368 F.3d 726, 729 (7th Cir. 2004). The creditors involved in those cases -- a bank and a dentist -- did not present the "principal purpose" issue posed by a debt buyer such as DNF in this case.

FDCPA's complex debt collector provisions in <u>Obduskey v. McCarthy & Holthus LLP</u>: "we generally presume that statutes do not contain surplusage." 139 S. Ct. 1029, 1037 (2019) (cleaned up). Thus, we look primarily to the ordinary meaning of the words "any business the principal purpose of which is the collection of any debts."

Emphasizing that the Supreme Court in <u>Henson</u> overruled the so-called "default test," DNF argues that the debt buyer is a creditor -- a person "to whom a debt is owed," § 1692a(4) -- and "the only way a creditor can become a debt collector is if the creditor uses a different name to collect debts owed to it," as provided in the second sentence of § 1692a(6). The principal purpose definition rests alongside the regularly collects definition in 15 U.S.C. § 1692a(6), separated by the word "or." If Congress had intended the broad creditor exclusion urged by DNF, it would simply have provided that a "debt collector" is "any business that regularly collects any debt." As the Supreme Court's discussion in <u>Henson</u> confirms, we must give effect to both definitions. <u>See generally</u> <u>Advoc. Health Care Network v. Stapleton</u>, 137 S. Ct. 1652, 1659 (2017); <u>Loughrin v. United States</u>, 573 U.S. 351, 357 (2014).

If § 1692a(6) in its entirety were given the narrow reading urged by DNF, then debt buyers such as DNF would be exempt from the FDCPA *even when collecting their own debts*. In other words, DNF urges us to construe the FDCPA as covering independent debt collectors when they perform collection actions for a fee, but not when they collect consumer debt purchased for their own account. The argument simply ignores the "principal purpose" definition, which applies to "any business" -- which obviously includes a debt buyer such as DNF -- whose "principal purpose . . . is the collection of *any* debts." As the Third Circuit observed in its first post-<u>Henson</u> decision:

> [The debt buyer defendant's] admitted sole business is collecting debts it has purchased. It uses the mails and wires for its business. . . . 'Any debts' [in the principal purpose definition] does not distinguish to whom

the debt is owed. And it stands in contrast to 'debts owed or due . . . another,' which limits only the 'regularly collects' definition. . . . Asking if [the defendant] is a debt collector is thus akin to asking if Popeye is a sailor.

Tepper v. Amos Fin., LLC, 898 F.3d 364, 370 (3d Cir. 2018); accord Barbato v. Greystone All., LLC, 916 F.3d 260, 269 (3d Cir.), cert. denied, 140 S. Ct. 245 (2019); Davidson, 797 F.3d at 1316 n.8.[4]

DNF's principal argument on appeal is that § 1692a(6) does not apply to "passive" debt buyers who hire independent law firms and collection agencies to collect the debts they purchase. The relevant definition of "collection" is "the act or process of collecting," DNF explains, citing Webster's Ninth New Collegiate Dictionary. The act or process of collecting requires an affirmative act of collecting, which requires interaction with debtors. The principal purpose of a passive debt buyer is "profiting on its investment," with no direct "interaction" with consumers.

The word "interaction" is conspicuously absent from the statute. We can agree a business's "purpose" is shown by its actions. But the FDCPA's principal purpose definition does not require the debt collector to "collect" debts; it must have as its "principal purpose . . . the collection of any debts." Read together, the words "purpose" and "collection" require *an act whose purpose is collection*. The foreseeable and logical consequence of hiring lawyers and debt collection agencies to collect debts DNF has purchased is *itself* evidence of purpose. For example, a hospital's purpose is providing healthcare to patients, even though it relies on independent physicians and other entities to provide the care. And if that is DNF's

_____

[4]The above-quoted House debate reinforces our conclusion that the plain meaning of the "principal purpose" definition reflects Congress's intent to include debt buyers whose principal business purpose is no different than that of the independent credit agencies covered by the "regularly collects" definition.

exclusive method of doing business, as the summary judgment record established, then its "principal" purpose is "the collection of any debts." As the Third Circuit stated this rather obvious deduction:

> [A]n entity that has the "collection of any debts" as its "most important" "aim" is a debt collector under this definition. . . . As long as a business's *raison d'être* is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment.

Barbato, 916 F.3d at 267; see McAdory v. M.N.S. Assocs., LLC, 952 F.3d 1089, 1094 (9th Cir. 2020) (in using the noun "collection," Congress "did not specify who must do the collecting or to whom the debt must be owed").

DNF counters that its "passive" investment business consists of "sitting idly, hoping a consumer who is delinquent on her payment obligations will volunteer payment." The argument distorts reality. DNF does not sit idly by, it takes affirmative steps to maximize collection of the debts it has purchased. Here, for example, DNF hired an attorney and commenced a state court collection action, signing sworn affidavits regarding the debt. When that failed, it hired RGS, a licensed debt collection agency. Purchase and collection are not separate activities for DNF; they are critical elements of its business plan. DNF's reading of 15 U.S.C. § 1692a(6) impermissibly collapses the alternative definitions of debt collector.

DNF does not challenge on appeal the district court's statement that its "primary objective is to collect on debt accounts it purchased in order to turn a profit." Therefore, on this summary judgment record, having considered the plain meaning of the statute's text, together with the structure of the FDCPA, we conclude the district court did not err in ruling as a matter of law that DNF is a "debt collector" under § 1692a(6). We do not hold that *any* purchaser of defaulted consumer debt qualifies as a "debt collector" under the "principal purpose" definition. There may

-9-

be truly "passive" buyers of such debt, akin to those who invest in municipal or commercial "junk bonds." They would present a far different "principal purpose" question, as would consumer debt buyers who engage in a wider array of activities, such as originating consumer loans, reselling debt portfolios, or offering other financial services. We also do not hold that any debt buyer that hires an independent debt collector thereby becomes a debt collector under § 1692a(6).

## II. Direct and Vicarious Liability.

The FDCPA does not impose liability simply for being a "debt collector." It prohibits a debt collector from engaging in various abusive, harassing, and misleading practices, including "not communicat[ing] with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney . . . and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2). Here, DNF knew that Reygadas was represented by counsel in the state court action, but it was RGS that sent the offending letter. To establish DNF's liability, Reygadas must show DNF is responsible for RGS's action. "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285 (2003). In resolving these issues, the Supreme Court applies "traditional agency principles" unless Congress has specified otherwise. Id. at 287; see Schmitt, 398 F.3d at 998, applying "general agency law" to the question of actual knowledge under § 1692c(a)(2).

Applying those rules, Reygadas cannot recover from DNF based on a theory of vicarious liability for RGS's action. RGS, the purported agent debt collector, must have actual knowledge the debtor is represented by counsel to violate § 1692c(a)(2) because "established agency law . . . dictates that while the knowledge of the agent is imputed to the principal, the converse is not true." Schmitt, 398 F.3d at 997. As it is undisputed that RGS did not have knowledge Reygadas was represented by an

attorney, RGS did not violate the FDCPA and Reygadas cannot prevail against DNF on a theory of vicarious liability.

Reygadas instead argues that "DNF is directly, not vicariously, liable because it took action through its agent that it could not lawfully take," and therefore RGS's wrongful actions may be imputed to DNF. For support, Reygadas relies on Restatement (Third) of Agency §§ 7.03 and 7.04, published thirty years after the FDCPA was enacted, and on In re Sterling, a factually distinguishable bankruptcy contempt case in which the Seventh Circuit noted that its reasoning "would not apply in situations where there is no agency relationship," such as a "creditor and debt-collector relationship under the Fair Debt Collection Practices Act." 933 F.3d 828, 834 n.6 (7th Cir. 2019). DNF responds that "Reygadas has not identified a single [FDCPA] case that imposes direct liability on a party for actions undertaken by an independent third party," particularly for an independent third party's *lawful* actions.

In granting summary judgment in favor of Reygadas, the district court stated: "Agency law makes a principal liable for the acts of its agent if those acts are within the scope of the agency." In support, the court cited only Jones v. Filer, Inc., 43 F. Supp. 2d 1052, 1056 (W.D. Ark. 1999), a case discussing vicarious, not direct, liability in which defendant was granted summary judgment because plaintiffs failed to prove an agency relationship.

In this case, Reygadas's direct liability theory assumes that an agency relationship existed between DNF and RGS. But we noted in Schmitt that "whether the relationship between a creditor and its debt collector is one of principal-agent," or whether the debt collector was instead an independent contractor, was "not clear on this record." 398 F.3d at 998. Analysis of this issue under "traditional agency principles" may differ when the creditor contracting with a debt collection agency is itself a debt collector. The district court failed to address these issues, and the record on appeal does not contain evidence establishing as a matter of law that DNF is

-11-

directly liable, as a principal, for RGS's lawful collection actions. Indeed, Reygadas did not put into evidence the agreement between RGS and DNF, which may explain why she did not move for summary judgment on the question of DNF's liability. Without such evidence, RGS's acts cannot be imputed to DNF to establish direct liability. Accordingly, we conclude the district court erred in granting partial summary judgment in favor of Reygadas *sua sponte*.

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

————————————————